CHARLES LOUNSBURY vs. PHILO B. NORTON AND OTHERS.

New Haven & Fairfield Cos., April T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

Every contract for the security of a debt by the conveyance of real estate is a mortgage, and any agreement of the parties for the limitation or extinguishment of the right of redemption does not destroy that right.

Where a party conveying real estate is entitled to a re-conveyance on the payment of a stipulated sum, which sum is the amount of a debt owed by him to the grantee, either previously existing or then arising so that the payment of the stipulated sum would be the payment of the debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used or whatever stipulations they may have inserted in the instrument.

A savings bank foreclosed a mortgage given by L upon a farm to secure a note of $8,000, and afterwards continued for five years to receive inter-

est from him on the debt and treated the mortgage as still outstanding. Held to open the foreclosure and give *L* as complete a right of redemption as if the foreclosure had never been had.

In this state of things an agreement was entered into by *L, F,* and the savings bank, which was intended for *L's* benefit, under which the bank quitclaimed its title to *F,* and he gave the bank his own note for $8,000 and a mortgage of the farm to secure the note, and gave a bond to *L* to convey the farm to him on his paying him within three years $8,000 with interest and any other expense that he should be at for taxes, repairs, insurance, or other cause, with interest on the same; *L* to be permitted to occupy the farm at a rental of the amount of the interest upon the $8,000 payable semi-annually in advance, and *F* to account to *L* for any excess above the debt if he sold the farm. Held to be a mortgage and not a contract of sale.

The three years expired without the payment of the $8,000 by *L* and F sold the farm to *N,* giving him a warranty deed, *N* assuming the mortgage debt to the savings bank as a part of the price. The farm was worth much more than the debt. *N* took with full knowledge of all the facts, and made no inquiry of *L,* although he was in possession. Held that the provision in the bond that if *F* should sell the property he should pay over to *L* the surplus obtained above the debt, did not constitute a power of sale of which, in the circumstances, *N* could avail himself as a defense against *L's* claim of a right to redeem.

[Argued April 17th—decided June 12th, 1890.]

SUIT for the redemption of mortgaged property; brought to the Superior Court in New Haven County, and heard before *F. B. Hall, J.* Facts found and the case reserved for advice. The facts are stated in the opinion, except the terms of a bond which is referred to but not recited. The bond was given by Frank Lounsbury to Charles Lounsbury, the plaintiff, was in the penal sum of $8,000, and was dated September 26th, 1883. The condition was as follows :—

" The condition of this obligation is such that, whereas the Dime Savings Bank has this day conveyed to said Frank Lounsbury a certain piece of land situated in said Waterbury, [describing it,] and has executed his promissory note to said bank for the sum of eight thousand dollars, secured by a mortgage on said premises :—Now it is agreed that if the said Charles Lounsbury shall, at any time within three years from the date hereof, pay to said Frank Lounsbury said sum of eight thousand dollars, together with the lawful interest thereon, and any further sum or expense said

Frank Lounsbury shall be at for taxes, repairs, insurance, or other expenses connected with said property, as well as interest upon said sums, or if the said Frank Lounsbury shall secure from said property, or from the sales of the whole or any portion thereof, within said time the aforesaid sum, then he will execute and deliver to said Charles Lounsbury a deed of the whole or remaining part of said premises, free of all incumbrance thereon, or, in the event the whole of said property shall be sold, to pay the surplus over and above said sums to said Charles Lounsbury. It is further agreed that said Charles Lounsbury shall be permitted to occupy said premises so long as the same are unsold during the aforesaid period, at a rental of the amount of the interest upon said sum of eight thousand dollars, the same to be paid semi-annually in advance. Now then if I, the said Frank Lounsbury, well and truly perform the obligation of this bond, then the same shall be null and void ; otherwise, of full force and virtue."

*W. L. Bennett*, with whom was *W. Cothren*, for the plaintiff.

1. It is well settled that a conveyance absolute on its face, if in fact taken as security, constitutes in equity a mortgage. *French* v. *Burns*, 35 Conn., 359 ; *Sheldon* v. *Bradley*, 37 id., 324 ; *Mead's Appeal from Probate*, id., 417. In the present case the absolute deed was from the bank to Frank Lounsbury, and the defeasance from Frank to Charles, but this variation in the facts makes no difference in the result. 1 Jones on Mort., § 331 ; *McPherson* v. *Hayward*, 81 Maine, 329 ; *Cullen* v. *Carey*, 146 Mass., 50. Apart from the distinct finding of the court that Frank took the premises to hold for the benefit of Charles, all the circumstances of the transaction indicate the interest of Frank to be that of mortgagee only.—(1.) Frank cannot be held to have purchased the land and made a conditional sale to Charles, by reason of the gross inadequacy of the price he paid. Charles's interest in the property was of the value of at least $14,000. Frank advanced but $122.11. It could not have been the

Lounsbury *v.* Norton.

intention of any one of the parties that he should acquire the absolute title for this insignificant sum. *Russell* v. *Southard*, 12 How., 139; *Campbell* v. *Dearborn*, 109 Mass., 130.—(2.) The continual possession of Charles also shows that no absolute sale was intended.—(3.) The fact that by the terms of the bond Charles is entitled to a re-conveyance upon re-payment of the money advanced by Frank, *with interest* upon such advances, is also of weight as showing that the land was held as security for advances. *Murphy* v. *Calley*, 1 Allen, 107.—(4.) The stipulation in the bond that Charles should be permitted to occupy the premises " at a rental of the amount of the interest upon said sum of $8,000, the same to be paid semi-annually in advance," shows that payments of interest on the mortgage by Frank were considered as advances to Charles to be repaid. This cover to hide the true nature of the transaction has been often before the courts. *Wright* v. *Bates*, 13 Verm., 341; *Woodward* v. *Pickett*, 8 Gray, 617; *Sears* v. *Dixon*, 33 Cal., 326; *Preschbaker* v. *Feaman*, 32 Ill., 475; *Boatright* v. *Peck*, 33 Tex., 68. If the transaction between Frank and Charles created the relation of mortgagee and mortgagor, Charles had a right to redeem the property, which he never lost. The maxim, " Once a mortgage, always a mortgage," is applicable. *French* v. *Burns*, 35 Conn., 363.

2. The land is equally redeemable from Norton unless he is a *bonâ fide* purchaser from Frank. The finding of the court cuts off all argument on this point: " Before the purchase of the property by Norton he was fully informed of the circumstances under which, and the purpose for which, Frank had received the title from the bank." Having taken his deed with knowledge, Norton was not a *bonâ fide* purchaser. The property is therefore in his hands charged with the same equities in favor of Charles that it was charged with in the hands of Frank. *French* v. *Burns*, 35 Conn., 364. The court has found that he did not, in fact, know of the intention of Frank to defraud his brother, but believed that he had the right in law to sell the property. But his ignorance on this point cannot affect the case unless by the bond Frank

had a full power of sale. The bond does not confer upon him in express terms any power of sale. It does refer to a possible sale of the land, and without doubt both contemplated a sale of it in the near future. But the circumstances forbid the supposition that either intended that such sale should be made without the consent of Charles. The only sales spoken of are such as are to be made within the three years, within the period when Charles's interest in the land is recognized in the instrument itself. Does it follow because provision is made for the payment of a mortgage debt out of the proceeds of the premises, if sold before default on the part of the mortgagor, that the mortgagee has power to give absolute title by his deed alone? A sale with the concurrence of the mortgagor was of course intended. *Wing* v. *Cooper*, 37 Verm., 69. But assuming that the bond conferred a power of sale, we claim that there has been no proper execution of that power. The execution of it is, in terms, limited to the three years. The deed to Norton was given long after their expiration. The deed too is a simple warranty, without reference to the power. Perry on Trusts, § 511; *Lockwood* v. *Sturdevant*, 6 Conn., 373. And if there was a power granted it was a power to sell for cash, and this does not authorize an exchange. This bond cannot be so construed as to empower Frank to trade the land for horses and a building lot. *Ringgold* v. *Ringgold*, 1 Har. & Gill, 11; *Cleveland* v. *State Bank*, 16 Ohio St., 236; *King* v. *Whiton*, 15 Wis., 684. A purchaser must look carefully to the intention and purpose of the power, as well as to its extent, for if it is executed contrary to its intent and purpose, or outside of its true scope, or not in the manner in which it is provided that it shall be executed, the purchaser takes no title. Perry on Trusts, § 602 *g*. In the present case there is not only actual fraud proved on the part of Frank, but circumstances show fraud on the part of Norton. The court indeed finds that he had not actual knowledge of Frank's fraud, but it is nowhere found that he himself acted in good faith, and when the circumstances of the sale are considered we believe the court will not acquit him of fraud.

He bought the land at much less than its value. He knew it to be worth not less than $20,000. The court finds it to be worth from $22,000 to $25,000. He examined into all the facts of Frank's title, and learned all the circumstances; but he avoided asking Charles or making any inquiry of him, although he was living on the farm. He knew that the sale was a secret one, without the knowledge or consent of Charles. And he obtained the land in exchange for property which he knew Charles had had no chance to accept.

*J. W. Webster* and *G. E. Terry*, for the defendants.

1. The savings bank held the legal title to the premises under its decree of foreclosure; and while perhaps the acceptance of money after the law-day would so far open the decree as to entitle the plaintiff in equity to redeem, it would not divest the bank of its legal title. *Phelps* v. *Sage*, 2 Day, 151; *Roath* v. *Smith*, 5 Conn., 133; *Porter* v. *Seeley*, 13 id., 564; *Smith* v. *Vincent*, 15 id., 1; *Doton* v. *Russell*, 17 id., 146; *Cross* v. *Robinson*, 21 id., 379. The plaintiff moreover is estopped from denying the title thus derived from the bank. The court finds that it was "made with the consent, at the request, and in the presence of the plaintiff, and for his benefit." Bigelow on Estoppel, 2d ed., 431.

2. Frank Lounsbury had full right to convey under the terms of the bond. As it was accepted by the plaintiff, it was as binding upon him as though signed by him. It was contemplated by its terms that Frank, during the term of three years, might sell a part or the whole of the property, first applying the proceeds to the extinguishment of his claim and accounting to the plaintiff for the balance, if any. During the term of the contract it created a trust in Frank for the purpose, among others, of selling a part or the whole of the property, and enabling Frank to pay his claims. The plaintiff thereby acknowledged the possession of Frank for the purpose of such sales. Frank was not ousted of possession when he conveyed to Norton. He sold no pretended title, he had the legal title, had good right to convey a part or the whole during the three years, and after

the expiration of the term the plaintiff forfeited his right to a conveyance. Frank could legally convey to a *bonâ fide* purchaser, and such conveyance would not be subject to any equitable claim the plaintiff might previously have had as against Frank. The court, it is true, has found fraud on the part of Frank Lounsbury in conveying the property to Norton. If this is a fact material to the case it ought not to be considered, as there is no allegation upon which to base it. It was found by the court outside the record and pleadings. If immaterial, it certainly is entitled to no consideration. *Douglas* v. *Town of Chatham*, 41 Conn., 211.

3. Norton acted in good faith, believing that Frank had good right to sell, founding his belief upon the acts of the plaintiff in consenting to the conveyance by the bank to him, and the agreement of the plaintiff contained in the bond allowing Frank to sell at any time during the term of the agreement, and forfeiting all his rights after the time limited. The court has found all the allegations of fraud charged against Norton untrue. The plaintiff is estopped by his own acts from claiming any rights in the property in the hands of Norton. He must look to Frank for his remedy for any violation of the trust conferred upon him. Bigelow on Estoppel, 434; *Winton* v. *Hart*, 39 Conn., 16; *McNeil* v. *Tenth Nat. Bank.*, 46 N. York, 325.

ANDREWS, C. J. Charles Lounsbury, the plaintiff, was on the 29th day of June, 1875, owner in fee of the farm of land described in the complaint. On that day he mortgaged it to the Dime Savings Bank of Waterbury to secure his note of three thousand dollars of the same date and payable on demand with interest. In September, 1887, the bank obtained a decree of foreclosure of the premises, and on the 22d day of March, 1878, filed its certificate of title by such foreclosure. After the latter date, notwithstanding the decree of foreclosure and the recording of the certificate, the plaintiff continued to make payments on the note and mortgage and the bank continued to receive them; and at all times subsequent to the decree of foreclosure until

the deed of the farm by the bank to Frank Lounsbury, as hereinafter mentioned, both the plaintiff and the bank considered and treated the mortgage as still outstanding and the decree of foreclosure as opened, so that the plaintiff might redeem his farm from the mortgage at any time by paying the amount due on the note and the costs of the foreclosure proceedings. Upon such understanding the plaintiff during said time made payments at sundry dates down to the 10th day of May, 1883, which the bank received and indorsed on the note. It is substantially conceded—at any rate it is not denied—and the law is clearly so, that this taking of payments by the bank under the circumstances operated to open the decree of foreclosure and to re-habilitate the plaintiff with the right to redeem as fully as if the decree of foreclosure had never been had. In this condition of things an agreement was made by the plaintiff, Frank Lounsbury, who was his brother, and the bank, pursuant to which the bank, on the 26th day of September, 1883, conveyed by a quit-claim deed all the right, title, interest, claim or demand which it had in the farm to Frank Lounsbury, he paying to the bank the sum of $122.11, in money, and giving his note for $8,000 to the bank, secured by a mortgage on the same land,—the sum of $8,122.11 being the amount then due from the plaintiff to the bank,—and on the same day, and as a part of the same agreement, Frank Lounsbury executed and delivered to the plaintiff the bond which is set out in full in the finding.

Frank Lounsbury took the conveyance from the bank with full knowledge of all the rights and obligations both of the bank and of the plaintiff. He knew that the bank held the title to the land as security for the debt owed to it by the plaintiff, and that the plaintiff had the right to redeem by paying the debt. He knew that the bank could lawfully convey to him such title in the land as a mortgagee has, and no more. "There is no principle in equity better settled than that every contract for the security of a debt by the conveyance of real estate is a mortgage; and all agreements of the parties tending to alter, in any subse-

quent event, the original nature of the mortgage and prevent the equity of redemption, are void. If it was a mortgage in the beginning the right of redemption is an inseparable incident and cannot be restrained or clogged by agreement." *Henry* v. *Davis*, 7 Johns. Ch., 42. The maxim is "Once a mortgage always a mortgage." *Newcomb* v. *Bonham*, 1 Vernon, 7 ; Pomeroy's Eq. Jur., sect. 1193.

Counsel for the defendants, apparently overlooking the rule of equity just mentioned, contend that because the deed from the bank to Frank Lounsbury was made with the consent of the plaintiff, at his request, in his presence, and for his benefit, he is therefore precluded from any right to redeem the premises thereby conveyed. They contend further that the bond given by Frank Lounsbury to the plaintiff was a contract for a sale of the land to him and not a defeasance. In considering their claim upon this part of the case, we think the defendants are entitled to assume, as they do, that the deed from the bank to Frank Lounsbury should be treated as though it was from the plaintiff himself.

Every case of this kind must of course to a large extent depend upon its own circumstances. Whether or not the parties intended a mortgage, or intended a sale with a contract for a re-purchase, is a question that must be decided by the papers themselves, or as aided by the extrinsic circumstances. We have examined all the circumstances in this case and have come clearly to the conclusion that the contract between Frank Lounsbury and his brother Charles, the plaintiff, was, and was intended to be, a mortgage, and not a sale with a contract for a repurchase. In the first place, the whole arrangement was made by the bank and Frank Lounsbury and the plaintiff for the benefit of the plaintiff, and " to prevent his losing the property." The plaintiff was straitened for money ; the value of the land was much greater than the debt; the plaintiff remained all the time in the possession of the farm, and although there was the form of a renting it to him, the rent was in terms " the amount of the interest on the said sum of eight thou-

sand dollars," and to be paid semi-annually in advance, just as the interest was to be paid to the bank. Then there is no where disclosed any intention on the part of Frank to become a purchaser, while all the time the plaintiff remained still a debtor to Frank for the amount of the bank mortgage, and for the taxes, repairs, insurance or other expenses connected with the property, as well as the interest on said sums. "If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is left still outstanding, not being discharged or satisfied by the conveyance, but the grantor is still regarded as owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to convey is in reality the payment of the existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used and whatever stipulation they may have inserted in the instrument." "This," says Pomeroy's Equity Jur., sect. 1195, "is a general criterion established by an overwhelming con sensus of authorities, which furnishes a sufficient test in the great majority of cases." And the same section adds that whenever the application of this test leaves a doubt, the American courts have generally leaned in favor of the mortgage. The cases in this state are in accord with the rule so given. *Mills* v. *Mills*, 26 Conn., 213; *French* v. *Burns*, 35 Conn., 359; *Pritchard* v. *Elton*, 38 Conn., 434.

In February, 1887, it was arranged between the plaintiff and Frank Lounsbury that the plaintiff should on the first day of April following pay to Frank the amount due to him for the payments he had made on the property, and that Frank should on that day make a full deed to the plaintiff of the property. This was an emphatic acknowledgment by Frank that he claimed to hold the title only as security for his advances. Frank Lounsbury in violation of his agreement, on the fourth day of March, 1887, without the knowledge of the plaintiff and without any notice to him, for the consideration of sixteen thousand dollars exe-

cuted and delivered to the defendant Philo B. Norton, a warranty deed of the premises, subject to the mortgage of eight thousand dollars, which was assumed by Norton.

In behalf of the defendant Norton it is insisted that whatever right of redemption the plaintiff may have had against Frank Lounsbury, yet that Frank had such a power of sale that he could legally convey to Norton, and that by such conveyance Norton would take the title not subject to any equitable claims that the plaintiff may have had as against Frank. In respect to Norton the finding is that before he purchased the property he was fully informed of the circumstances under which and the purpose for which Frank Lounsbury had received title to it from the savings bank. He understood the terms and conditions of the bond from Frank to the plaintiff, which had been shown to him, and had knowledge of all the facts in the case, except that he did not know of the arrangement by which Frank had agreed to re-convey to the plaintiff on the first day of April, 1887. He made no inquiry of the plaintiff. A purchaser under such circumstances, who knows the original nature of the transaction, will be compelled in equity to surrender the estate on receiving the money which the mortgagor justly owes. *Croft* v. *Powell*, Comyn's Rep., 603, (case 262); 1 Hilliard on Mortgages, 141. But this is not all. Norton knew that he was obtaining for sixteen thousand dollars property which he believed to be worth twenty thousand dollars, and which the court finds was worth from twenty-three to twenty-five thousand dollars, the title to which was taken by Frank Lounsbury for the purpose of benefiting the plaintiff and to prevent the plaintiff from losing it, and of which the plaintiff had remained in the possession all the time. It is certain that he must have examined the property, otherwise he would not have known its value, and there is no reason given why he did not see and consult the plaintiff. The knowledge which Norton had of the facts surrounding the case, as well as his apparent willingness to remain ignorant of other facts, while not perhaps amounting to actual fraud, serve to show

that he was not a *bonâ fide* purchaser, and that he has no greater rights in the premises than Frank Lounsbury had.

The Superior Court is advised that Charles Lounsbury had the right to redeem the premises as prayed for in the complaint. If by reason of his death it is necessary that other averments be made or that other parties be brought in, this should be done, and such further hearing be had as the additional counts may require, and judgment rendered according to the principles herein stated.

In this opinion the other judges concurred.