GEORGE A. HAYDEN *vs.* CHARTER OAK DRIVING PARK.

Hartford Dist., May T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

A *bonâ fide* purchaser is one who has bought property without notice of the claims of third parties to it and upon the faith that no such claims exist, and who has actually paid therefor, or parted with some valuable consideration, or has in some way altered his legal condition for the worse.

It is not enough that he has agreed to pay a valuable consideration before notice. He must have actually paid or parted with it before notice.

*H* agreed to transfer to the plaintiff certain stock of which he held a certificate, the plaintiff agreeing in consideration thereof to surrender to *H* sundry notes which he held against him. *H* honestly supposed that he was entitled to the stock, and in good faith made the transfer on the back of the certificate, but before the plaintiff surrendered the notes he received notice from the corporation that the certificate was issued by mistake, as it was in fact, and that *H* was not entitled to the stock. The plaintiff however surrendered the notes to *H*, and, the corporation refusing to issue a certificate to him, brought a suit to compel it to do so. Held that as the plaintiff had notice of the facts before surrendering the notes he had no better right to the stock than *H* would have had, and was not entitled to a certificate of it.

[Argued May 2d—decided May 22d, 1893.]

ACTION to compel the defendant corporation to issue to the plaintiff a certificate for certain shares of its stock, and for damages for the refusal to issue the same; brought to the Superior Court in Hartford County, and heard before *Prentice, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiff.

*H. C. Robinson* and *L. F. Robinson*, for the appellant.

1. The plaintiff was a *bonâ fide* purchaser for value of a certificate of stock regularly issued by the officers of the defendant, and to dispute the representation of which no step has ever been taken by the defendant, although the defendant well knew that the certificate had been issued and outstanding for seven years. A certificate of stock is a continuing representation that the person named is the owner of

the number of shares specified ; and the corporation is bound by it for all reasons of business safety. Herman on Estoppel, § 1189 ; Cook on Stock & Stockholders, § 293 ; 1 Morawetz on Corp., § 186 ; 2 id., § 761 ; *Bridgeport Bank* v. *N. York & N. Haven R. R. Co.*, 30 Conn., 231 ; *Holbrook* v. *N. York Zinc Co.*, 57 N. York, 616.

2. The assignment of the twenty-five shares of stock included in the certificate which, at the time of assignment, certified Harbison to be the owner of thirty-five shares, was made in consideration of the discharge of a debt and the release, as the parties understood, of a pledge of the whole thirty-five shares. The good faith of the transaction and the value of the consideration cannot be questioned. *Parker* v. *Crittenden*, 37 Conn., 148, 153 ; *Roberts* v. *Hall*, id., 205, 211. The fact that the notes were surrendered or canceled at a later date is insignificant, as the debt was extinguished. 18 Am. & Eng. Enc. of Law, 174, and cases cited.

3. If there is lacking any element which would create an estoppel against the defendant, or if there is any legal prohibition upon the increase of the defendant's capital stock, so that an equitable decree is improper, the defendant is liable in damages to the plaintiff. It is well settled that a corporation is liable in damages to an innocent holder of an over-issued certificate of its stock. The measure of damages in favor of an innocent purchaser is the value of the stock at the time of demand for the issue of a new certificate, with interest from that date. *Bridgeport Bank* v. *N. York & N. Haven R. R. Co.*, 30 Conn., 270 ; *Peoples' Bank* v. *Kurtz*, 99 Penn. St., 344 ; Lowell on Transfer of Stock, §§ 217, 218 ; Sedgwick on Measure of Damages, 367 ; Cook on Stock & Stockholders, § 584.

*C. J. Cole*, for the appellee.

TORRANCE, J. The plaintiff brings this action to compel the defendant company to issue and deliver to him a certificate for eighteen shares of its capital stock, or to recover

damages for the value of such shares. The facts upon which he bases his claim are in substance the following :—

From about the time of the organization of the defendant corporation in 1873, one Harbison, under whom the plaintiff claims, was its secretary, down to March, 1878. He was then chosen president of the corporation, which office he held continuously till March, 1882, when his official relations with the defendant ended. In February, 1881, a certificate for forty-one shares of the defendant's capital stock was issued to Harbison in proper form, signed by him as president. At this time Harbison was in fact the owner of and entitled to only twenty-three shares of the stock, but by mistake the certificate was issued to him for eighteen shares more than he was entitled to. Harbison then and always believed that he was the owner of and entitled to the number of shares represented by the certificate. At no time has the defendant issued stock up to the limit of its authorized capital.

On March 30th, 1888, the certificate showed on its face that Harbison was the apparent owner of thirty-five shares, he having previously transferred six shares to other parties. On that day the plaintiff held sundry notes of Harbison's, upon which there was due about nine hundred dollars. Just before this day Harbison had bargained to one McGovern ten of the thirty-five shares, but had not transferred them. The certificate itself was in the possession of one Adams, and the plaintiff then supposed that it was thus held by Adams in pledge for him. Whether it was in fact thus held in pledge is not found.

In this situation Harbison and Hayden agreed that the former should assign and transfer the remaining twenty-five shares represented by the certificate to Hayden, after the transfer to McGovern of his ten shares, and that Hayden should, in consideration therefor, surrender to Harbison and discharge the notes held by Hayden as aforesaid.

Having made this agreement, the plaintiff and Harbison together procured the certificate at Adams's office, and Harbison indorsed thereon in proper form a transfer to McGov-

ern of ten shares, and then indorsed thereon a transfer of the remaining twenty-five shares to the plaintiff as agreed. Harbison then wrote a letter to the defendant's secretary notifying him of these transfers. This letter with the certificate was inclosed in an envelope on the same day and sent by mail to the defendant. Nothing else was done by Harbison or the plaintiff at this time towards the performance of the agreement, and said notes were not then canceled or surrendered, but remained in the plaintiff's hands for many months thereafter.

Upon the receipt of the letter and certificate the defendant issued a certificate to McGovern for ten shares and to the plaintiff a certificate for seven shares. On receipt of the last certificate the plaintiff called at the office of the company for an explanation, and was then informed by the secretary that Harbison had been entitled to only twenty-three shares originally instead of forty-one, that the original certificate had been issued by mistake, and that Harbison was then entitled to only seven shares. He was then also shown the books, whereon the truth of this claim appeared.

The plaintiff had further interviews with the officers of the company upon this subject, wherein the same information was repeated, and he was fully advised of the determination of the company not to recognize Harbison's right to the eighteen shares, and not to issue a certificate therefor to the plaintiff.

The notes remained in the plaintiff's hands until long after these interviews, when, with full knowledge of the claim and determination of the defendant in the matter, he surrendered them to Harbison, by whom they were destroyed.

At the time of the agreement the plaintiff, relying upon the representations of the certificate, which then showed that Harbison was the apparent owner of thirty-five shares, believed that Harbison was such owner, and the plaintiff's agreement was made upon the faith of such belief. Prior to the first visit of the plaintiff to the defendant's office as aforesaid the company had never notified Harbison or the plaintiff that said eighteen shares represented an irregular issue

of the stock. In January, 1890, the plaintiff made a formal demand on the defendant for the issue to him of a certificate of eighteen shares of its stock, which was then worth fifty-five dollars per share. The defendant then and ever since has refused to do so.

The plaintiff claims upon these facts to be entitled to the relief which he seeks against the defendant. This claim is based upon two propositions. The first is, that the representations of the defendant upon its certificate of stock estop it from claiming, against a *bonâ fide* purchaser for value, that the same was an over-issue of stock in excess of the actual share-holding of Harbison. The second is, that the plaintiff, under the facts as they appear of record, was a *bonâ fide* purchaser for value.

It is not enough that the plaintiff proves one of these propositions; the truth of both is essential to his success. If either one of them is untrue his claim is without foundation.

As to the first proposition, it is to be observed that the eighteen shares of stock issued to Harbison by mistake in excess of his actual share-holding, were not strictly speaking over-issued stock. "By over-issued stock is to be understood stock issued in excess of the amount limited and prescribed by the act of incorporation. Certificates of stock issued in excess of the certificates that represent the full authorized capital of the corporation represent over-issued stock. Such stock is spurious and wholly void. This is the settled law, and it prevails equally whether the over-issue is the result of accident or mistake, or want of knowledge of the law, or is due to fraud and intentional wrong doing. * * * So rigid and well established is this rule that not even a *bonâ fide* holder of such stock can give to it any validity or vitality." Cook's Law of Stock & Stockholders, § 292. In such cases, however, where certificates of over-issued stock signed by the corporate officers having authority to issue stock are actually issued by them to *bonâ fide* purchasers for value, the corporation may be liable in damages to such purchaser. Cook's Law of Stock & Stockholders, § 293.

In the case at bar the corporate officers by mistake issued stock, not in excess of the capital stock, but what may perhaps be called stock forming a part of the un-issued original capital stock. When the certificate was issued to Harbison in 1881, we may perhaps for the purposes in this case regard the eighteen shares issued to him by mistake as held by the company, to be issued in the usual way on payment of the price thereof.

Now upon the assumption that the plaintiff was a *bonâ fide* purchaser for value of these eighteen shares, the plaintiff in the first proposition claims that the defendant upon the facts found is estopped as against him to set up this mistake. Upon that assumption this claim is perhaps well founded, although we have no occasion at present to consider or decide upon it. See the authorities cited in Cook's Law of Stock & Stockholders, § 416. In the discussion therefore, for the purposes of the argument, we will assume that this first claim is true.

The important question remains—was the plaintiff a *bonâ fide* purchaser for value? If he was not he stands in no better position than Harbison, and as against him we think the defendant would not be estopped to set up this mistake.

It is perhaps, for the purposes of this case, sufficiently accurate to say that a *bonâ fide* purchaser is one who has bought property without notice of the claims of third parties thereto, upon the faith that no such claims exist, and who has therefore actually paid or parted with some valuable consideration or has in some way altered his legal condition for the worse. It is not enough that he has agreed to pay a valuable consideration before notice ; he must have actually paid or parted with it before notice. In Pomeroy's Equity Jurisprudence the law is thus stated :—" Notice received before the party has actually paid the money or parted with the other valuable consideration, is a valid and binding notice, and subjects his interest to the prior equity of which he is notified ; and this is true even though he has already taken a conveyance of the legal title and has given security for the purchase price, even by an instrument under seal. The reason is that

the conveyance of the legal estate is under such circumstances a voluntary one, because the agreement to pay the price and the security given therefor are in reality mere nullities." § 691. "Not only must there be a valuable consideration in fact, but it must be paid before notice of the prior claim. Notice after the agreement for purchase is made, but before any payment, will destroy the character of the *bonâ fide* purchase." § 750. "It is further settled that there must be actual payment before any notice, or what in law is tantamount to payment—a transfer of property or things in action, or an absolute change of the purchaser's legal position for the worse, or the assumption by him of some new irrevocable legal obligation. It follows therefore that his own promise, contract, bond, covenant, bond and mortgage, or other non-negotiable security for the price, will not render the party a *bonâ fide* purchaser, nor entitle him to protection ; for upon failure of the consideration he can be relieved from such obligations in equity if not at law." § 751. See also *Lytle* v. *Lansing*, 147 U. S. R., 59.

Applying these principles to the case at bar, we think it is quite clear that the plaintiff, before he paid or parted with any valuable consideration to Harbison or had changed his position in any way for the worse, had ample notice of the claims of the defendant, and was therefore not a *bonâ fide* purchaser.

At the time when he first received notice of the claims of the defendant as to these eighteen shares of stock the plaintiff had simply orally agreed to discharge and surrender the notes to Harbison. The agreement on his part did not of itself operate as a discharge of the debt or a discharge and surrender of the notes. It was simply a promise to do so in the future. It was an executory agreement. Moreover, it is quite clear from the language of the agreement and the subsequent conduct of the parties, that the performance of the agreement by the plaintiff was conditioned upon the actual transfer to him of twenty-five shares of stock. The parties evidently did not regard the transfer as complete, when the certificate was deposited in the mail addressed to

the secretary of the defendant company, for Harbison did not demand the notes, nor did the plaintiff discharge and surrender them as agreed. They both seemed to regard the contract, and rightly we think, as one which imposed no obligation on the plaintiff to discharge and surrender the notes until the entire twenty-five shares of stock had been actually transferred to him. Until that was done he was to part with nothing. It is impossible to regard the agreement as one by which the plaintiff bound himself absolutely to discharge the debt and surrender the notes, or one the mere making of which operated to discharge the debt and cancel the notes. Until the twenty-five shares of stock were actually transferred to the plaintiff as agreed his position as Harbison's creditor remained unaffected by the contract. The agreement did not pass any title to the stock at all. That was to be done by the performance of the agreement. It did not affect the debt or the notes. That was to be discharged and they were to be surrendered by its performance. Until full performance by Harbison the stock remained his, and until full performance by the plaintiff the debt and notes remained his as before.

For the purposes of this discussion we may admit that the discharge of this antecedent debt and the surrender of the notes to Harbison would constitute a valuable consideration. If, before he received any notice of the claims of the defendant upon these eighteen shares of stock, the plaintiff had in fact discharged the debt and surrendered the notes, we may, for argument's sake, concede that he would have been a *bonâ fide* purchaser. But he did not in fact surrender the notes until months after he had obtained full knowledge of the defendant's claims. At the time he first received such knowledge he had parted with nothing of value and had not changed in any way his legal position for the worse. The mere fact that he had entered into an agreement to discharge the debt and surrender the notes was not, upon the authorities hereinbefore cited, a change of his legal position for the worse, because it was an agreement which Harbison could

not enforce against the plaintiff in law or in equity until he himself had performed his part of the agreement.

If our construction of the agreement is correct, it follows that the plaintiff, when he first received notice of the defendant's claims, had done nothing whatever in performance of his agreement, and had parted with nothing whatever of value on the faith of his claimed purchase. His rights of action against Harbison remained intact as before the agreement. In this condition of things the plaintiff, with full knowledge of the defendant's claims, and before Harbison had or claimed to have fully performed the agreement on his part, voluntarily, so far as appears, surrendered the notes to Harbison.

Under these circumstances it is impossible to regard the plaintiff as a *bonâ fide* purchaser for value, in fact or in law. He stands in Harbison's shoes, and the mistake which would be available against Harbison is available against him.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.