[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this action to foreclose what was a second mortgage the (Second). Defendants counterclaim in negligence; for fraud; unfair and deceptive practices; and CUTPA violations.
Facts CT Page 6142
By a note dated December 20, 1984, Charter Investment Corporation (Charter), promised to pay plaintiff $325,000.00, plus interest.
On that date, Charter to secure the note, gave a mortgage (the First) to the plaintiff, on a certain piece of land in the Town of Farmington and known as Lot 1 Gleneagles Drive (the Property).
On August 4, 1986, plaintiff began a foreclosure action (the "First Foreclosure") in this court to foreclose the First.
The First Foreclosure action was begun by complaint dated August 4, 1986. That complaint was amended by a complaint dated February 19, 1987. Plaintiff filed a lis pendens in the First Foreclosure action on or before August 13, 1986. The final judgment of strict foreclosure in the First Foreclosure action was entered April 13, 1987. In none of those documents is the Second mentioned.
On August 19, 1985, defendant Charter gave a note to the plaintiff for $55,000.00, plus interest. Defendants Guy Owens (Owens) and George Jorgensen (Jorgensen) were endorsers on that note.
The note is secured by the Second mortgage from Charter dated August 19, 1985 on the Property.
In the First Foreclosure, the Bank's Complaint did not list the Second as a subsequent encumbrance on the Property. The Second was omitted deliberately because plaintiff's attorney thought that including the Second in the First Foreclosure could risk a merger of the two mortgages and thus might impair the plaintiff's right to enforce its rights against the maker and endorsers of the Second's note.
During the course of the First Foreclosure, the attorney for E. James Wisner, Kathy Wisner, and John R. Yaissle, Trustee (hereafter the "Wisners"), advised plaintiff Bank that his clients, holders of a subsequent encumbrance on the Property, should have been made parties to the First foreclosure. Thereafter, the Bank determined that the Wisners inadvertently had not been made parties to the First Foreclosure. All three were then joined as parties to the First Foreclosure.
Subsequently, disputes arose between the Bank and the Wisners with respect to the priority between the Second and the Wisners' encumbrance, and as to the value of the Property. CT Page 6143
In May 1987, the plaintiff made an agreement to, in effect, buy out the interest of the Wisners for $15,000 plus a division of those proceeds resulting from a sale of the property by plaintiff after title vested in it which were in excess of $475,000. In return Wisners et al agreed not to press for foreclosure by sale.
This agreement is set out in defendant's Exhibit 3. Defendants say they knew of Exhibit 3 in early April but the court interprets that to mean they knew of the agreement that was later reduced to writing in Exhibit 3. As of that time the plaintiffs First mortgage claim was about $385,000 and its Second mortgage claim was about $66,000. When these two sums are added together and the $15,000 base money to Wisner's is then added, the total is $466,000 or very close to the $475,000 floor for the plaintiff's division of proceeds with Wisners.
When the First Foreclosure was commenced, neither Maryse Szydlowski (Maryse) the record owner of the Property in this action, nor defendant George S. Szydlowski (George) who became a subsequent encumbrancer, had any recorded interest in the Property. George, subsequently learned of the First Foreclosure and approached the plaintiff and its attorneys to express his interest in acquiring the Property. At all times, George was acting as the agent for Maryse, his wife, as well as for himself.
Beginning November 6, 1986 George had 22 telephone conferences with plaintiff's attorneys before May 19, 1987. On that later date he had 4 telephone conferences with one or more of them and one face-to-face meeting.
The court finds that clearly plaintiff never intended a merger of the interests of its two mortgages, before, after or during the First Foreclosure. See Connecticut National Bank v. Chapman, 153 Conn. 393, 397; Goodwin v. Keney, 47 Conn. 486,493-495 (re legal and equitable titles).
In the First Foreclosure the court found the first mortgage debt was $395,016.06 and taxed costs of $1,150.60.
According to the complaint, there were town taxes due of $5,106.85 through June 30, 1986.[1] There was an attachment for $175,000 in favor of one Dwight Owen Schweitzeri (Schweitzer) there was a judgment lien in favor of West Hartford Stairs and Cabinet, Inc. (West Hartford) for $5,826.25 plus costs of suit there was a judgment lien of $5,754 in favor of Antonio Giuliani d/b/a (Giuliani); there was an attachment for $10,000 in favor of Pattison Fuel Company, Inc. d/b/a (Patterson); there was a certificate of mechanic's lien for $2,857.50 in CT Page 6144 favor of the Green Machine, Inc. (Green Machine) and there was an attachment for $18,500 in favor of Robert R. Forcier (Forcier).
In addition the First Foreclosure at the hearing on entry of judgment, court was made aware by plaintiff's attorney of the Second as an encumbrance on the Property in favor of the plaintiff in the principal amount of $55,000. It was also aware of the third position in favor of the Wisners in the amount of "approximately" $70,000. However, the court made no determination that the joinder of plaintiff as a defendant in regard to the Second was "necessary for a complete determination. . .of any question involved." C.G.S. 52-102. Also see Practice Book Sec. 6.
If all of these encumbrances are added the total is $739,114.98. If we remove those that are simply attachments or mechanic's liens we still get a total of $530,257.48.
George and Maryse in May 1987 purchased the interests of five encumbrances;, three for George and two for Maryse. They paid a total of $80,000[2] for those five purchases. On May 19, 1987 Maryse redeemed for about $400,000.
The property at the time of trial in this action had a fair market value of $575,000.
George is an attorney licensed in Connecticut.
George went to see the encumbrancer Schweitzer in February 1987 to talk about Schweitzer's interest in the property. He went to the assessor's office, the Town Clerk's office and the Hartford Superior Court Record's office sometime between December 1986 and March 27, 1987 all to pursue information about the Property and the First Foreclosure. In early April he found out about the Wisner mortgage. It was not mentioned in the original complaint in the First Foreclosure. He looked at the land records. While so looking he found the Wisner mortgage. He also noted at that time there were "numerous encumbrances on the land records." George bought the Wisner mortgage and took an assignment sometime before he recorded that assignment on May 19, 1987.
At some time before he recorded, he "looked up" the deed into the then equity owner, Charter.
Mr. Messier of plaintiff told George of the bank's Second mortgage before the redemption. He disclosed to George the balances owed on both the First and Second mortgages on at least two occasions before the redemption. George said he would CT Page 6145 redeem and then pay off the Second mortgage in full within ninety (90) days or three months. As a result the court need not decide the issue of whether or not the general rule that "[t]he policy of our law makes the [recorded Second mortgage] sufficient notice" applies here. Beach v. Osborne et al,74 Conn. 405, 412. Of course, there was no false representation that might effect a constructive notice claim. Loverin v. Kuhne, 94 Conn. 219, 224-226.
Attorney Walter Hampton, representing plaintiff, told George on numerous occasions of the Second mortgage before the redemption. Another attorney for plaintiff, Robert Sattin also told George of the amounts due on the two mortgages on May 19, 1987 before the redemption was completed. ( i.e., when George was at the Superior Court.) George said he would take care of the Second mortgage later and also said "I'm not worried about that."
Plaintiff recorded a Subordination Agreement dated May 19, 1987 on that date at 11:40 A.M. That agreement subordinates plaintiff First mortgage to its Second mortgage.[3]
Maryse Szydlowski was not a bona fide purchaser Hayden v. Charter Oak Dining Park, 63 Conn. 142, 147-148. The court can find nothing here that would lead it to apply any equitable doctrine in her favor. cf Ensign v. Batterson et al, 68 Conn. 298,310.
George admits that on May 19, 1987 at about 3:30 p.m. he saw the subordination agreement. It clearly recites the existence of the Second. He made no call to request an explanation. He made no effort to stop payment on his check. He made no request that plaintiff or its attorneys hold his check until the subordination agreement was explained. He recorded his satisfaction of judgment at 4:09 p.m.
He was then and is now satisfied with the power of practice book Section 186.
As to whether, or not our practice book 186 supersedes the legislative enactments of C.G.S. 47-10 and 47-1747-33k this court need not decide and so it shall not. cf Stanio v. Berner Lohne Co., 7 Conn. Sup. 452. However, normally practice book rules "do not expand, abridge or modify any substantive rights or remedies" Duve v. Duve,25 Conn. App. 262, 267. Both plaintiff's right to foreclose and defendants' right to redeem are substantive. See C.G.S. 49-16 and 49-19. In addition, C.G.S. 52-325
providing that notices of foreclosure actions be recorded on the land records does not provide a base CT Page 6146 for P.B. 186. When we look at C.G.S. 49-30 it would appear that the legislature did not intend the harsh result defendants seek.
There is no question that both Maryse and George Szydlowski knew about the Second mortgage when they bought their interests. There is no question that at the court hearing on the First Foreclosure judgment the attorney for plaintiff made it clear to the court that the Second existed and was not being abandoned by plaintiff. The real question is the legal one of whether or not our practice book rule 186 is mandatory and requires this court to abandon the clear equities in favor of the plaintiff. It is not mandatory. A strict adherence to it in this case would be grossly inequitable. P.B. 6.
The property is subject to the Second mortgage. Demand for payment has been made and defendants have made no payment or offer of payment of the debt due in accordance with the note secured by the Second mortgage.
The defendant Maryse Syzdlowski has completely failed to sustain her burden of proof (1) in regard to each of her three special defenses; and (2) in regard to her revised counterclaims.
The defendant George Szydlowski has completely failed to sustain his burden of proof in regard to each of his three special-defenses.
The court finds the debt to be $91,213.96 as of April 4, 1991. The court finds an award of attorney's fees of $30,000 to plaintiff is fair and reasonable. Costs shall be taxed in favor of plaintiffs.
O'Neill, J.