In re K CHEMICAL CORP., Debtor.

VANCO TRADING, INC., Movant,

v.

Barry M. MONHEIT, Trustee, Respondent.

Bankruptcy No. 92–53580.
Doc. I.D. Nos. 105, 166.

United States Bankruptcy Court, D. Connecticut.

Oct. 20, 1995.

As Revised Oct. 31, 1995.

---

Ellery E. Plotkin, Freccia & Plotkin, Stamford, Connecticut, for Vanco Trading, Inc.

Irve J. Goldman, Kleban & Samor, Southport, Connecticut, for Trustee.

## MEMORANDUM OF DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

This decision addresses the propriety of summary judgment in favor of the Respondent–Trustee on a claimant's Motion for Allowance and Payment of Administrative Claim (hereinafter referred to as the "Payment Motion"). Necessary to such decision is a consideration of the circumstances under which a claim incurred by the Debtor immediately prior to the filing of a Chapter 11 petition may be afforded priority treatment. The Court has also considered whether constructive trust theory may provide the claim-

ant with an alternative remedy in the context of this contested matter.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B).

## III. BACKGROUND

On October 29, 1992 (hereinafter referred to as the "Petition Date"), at approximately 4:05 p.m., K Chemical Corp. (hereinafter referred to as the "Debtor or Debtor–in–Possession") commenced a voluntary Chapter 11 case in this Court by the filing of a petition. An Order for Relief was simultaneously entered thereon pursuant to 11 U.S.C. § 301.

Subsequent to the Petition Date, the Debtor operated its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1101(1), 1107 and 1108, but only until December 1992; at which time Barry M. Monheit (hereinafter referred to as the "Trustee") was appointed and subsequently approved as Chapter 11 Trustee for the Debtor's estate pursuant to 11 U.S.C. §§ 1104(a), (c). The Trustee thereafter operated the Debtor's business and obtained confirmation of a Third Amended Plan of Reorganization (hereinafter referred to as the "Plan") on April 23, 1993.

Also on April 23, 1993, Vanco Trading, Inc. (hereinafter referred to as "Vanco") filed the Payment Motion, giving rise to the underlying contested matter. The Payment Motion seeks allowance and payment of an administrative expense priority claim under 11 U.S.C. §§ 503(a), (b) and 507(a)(1) in the amount of $29,904.00 [1], representing the al-

legedly unpaid contract price of chemical products sold by Vanco to the Debtor (hereinafter referred to as the "Chemicals").

It is stipulated that Vanco delivered the Chemicals to the Debtor on credit on the Petition Date, but prior to the actual time of the filing of the Debtor's Petition. The nature of Vanco's claim resulting from non-payment of the purchase price of the Chemicals is the subject of the present proceedings.

Vanco invokes this Court's equity jurisdiction in presenting its arguments for administrative claim status. First, Vanco urges the Court not to "fractionalize" the Petition Date into pre-petition and post-petition segments, but rather, for the purposes of this matter, to treat all business conducted by the Debtor and/or Debtor–in–Possession on the Petition Date as post-petition activity. Second, Vanco asserts that because it allegedly was denied the right to demand and seek reclamation of the Chemicals, it should be accorded administrative status.

In response to the Payment Motion, on October 25, 1993, the Trustee filed his motion for summary judgment (hereinafter referred to as the "Summary Judgment Motion"), together with a memorandum of law in support thereof. The Summary Judgment Motion was supported by a Stipulation of Facts and a Statement of Facts Pursuant to Local District Court Rule 9(c)(1). On November 8, 1993, Vanco filed its Memorandum of Law in Opposition to Trustee's Motion for Summary Judgment, together with a Statement of Facts Pursuant to Local District Court Rule 9(c)2, and the Affidavits of Nancy Pennell and Jan Van Eck.

The Court heard oral argument on the Summary Judgment Motion on January 10, 1994 (hereinafter referred to as the "Hearing"). At the time of the Hearing the Court inquired if constructive trust theory—a topic not previously briefed by the parties—might

---

**1.** Section 5.1 of the Plan provides, *inter alia,* that "[a]dministrative claims incurred by the Debtor or Trustee in the ordinary course of business from the Petition Date to the Effective Date shall be paid by the Trustee when due in accordance with their terms in the ordinary course of business, as and when allowed under section 503(b)(1) of the Bankruptcy Code, or upon such other terms as may be agreed upon by the holder of any such Administrative Claim and the Trustee." Despite the liquidating nature of the Plan, and the possibility that the subject claim may not be embraced by the language of Plan Section 5.1, the parties have represented to the Court their agreement that a sum sufficient to satisfy the amount in dispute in the instant matter has been reserved by the Trustee subject to a final determination of the nature of Vanco's claim.

provide an alternative remedy for Vanco, and inject genuine issues of material fact into these proceedings. At the Court's invitation the parties each provided supplemental memoranda of law on the constructive trust issue. In addition, the Trustee provided an unverified Statement regarding his ability to "trace" funds received from the bankruptcy estate's vendee of the Chemicals.

## IV. DISCUSSION

### A. Summary Judgment Standards.

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, directs that summary judgment enter when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

When ruling on motions for summary judgment "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there are no material facts in dispute and all reasonable inferences are to be drawn, and all ambiguities resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

However, to defeat a properly supported motion for summary judgment the non-moving party "may not rest upon the mere allegations or denials of its pleadings"; the non-moving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Rule 9(c) of the Local Rules of Civil Procedure of the District of Connecticut (hereinafter referred to as the "Local Rule(s)") supplements Fed.R.Civ.P. 56 by requiring statements of material fact from each party to a summary judgment motion. The facts set forth in a movant's statement "will be deemed to be admitted unless controverted by the statement required to be served by the opposing party ..." Local Rule 9(c)1.

Although Local Rule 9(c), by its literal terms, only deems admitted (*i.e.* subject to no genuine issue) those facts included on a *movant's* Local Rule 9(c)1 Statement if not controverted by the respondent's Local Rule 9(c)(2) statement, the Court is of the view that similar effect (*i.e.* deemed to be subject to genuine issue) should be given those facts included on a respondent's statement if not controverted by the movant's statement. In this matter the parties' respective Local Rule 9(c) statements are not in conflict. Therefore, for purposes of the Court's summary judgment analysis only, the facts stated in the Trustee's Local Rule 9(c)1 Statement will be deemed admitted, and those facts recited in Vanco's Local Rule 9(c)2 Statement will be assumed to be ones for which there is a "genuine issue". Likewise, for the purposes of this adversary proceeding only, the facts suggested by the uncontroverted affidavits submitted by Vanco (Affidavits of Jan Van Eck and Nancy Pennell) will be deemed to be in genuine issue. The Court also has deemed as not genuinely at issue those facts that are stipulated to between the parties or susceptible of judicial notice.

The Trustee annexed to the Summary Judgment Motion a Stipulation of Facts which was subsequently endorsed by counsel for Vanco in open court. The Stipulation states the following uncontested facts:

1. The Debtor ordered the Chemicals prior to the Petition Date.

2. On the Petition Date, but prior to the actual time of the filing of the Petition, Vanco delivered the Chemicals to a carrier hired by the Debtor.

3. The delivery of the Chemicals took place at a public warehouse/storage facility located in the State of New Jersey, which was Vanco's place for delivery.

4. The Debtor or its estate received payment from its customer from resale of the Chemicals.

The question for the Court thus becomes whether these stipulated facts are sufficient in themselves to defeat the Payment Motion as a matter of law.

## B. Administrative Claim Analysis.

■ Since the underlying motion seeks allowance and payment of an administrative expense priority claim, this Court's analysis logically begins with the statutory framework providing for such claims. 11 U.S.C. § 507(a) provides a first distributional priority to "administrative expenses allowed under section 503(b)".

### 1. Section 503(b)(1)(A).

Vanco's claim is a trade credit receivable. The subsection of Section 503(b) most often applied to trade credit claims is 11 U.S.C. § 503(b)(1)(A), which directs that administrative expenses "shall be allowed" for "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ..."

■ The law of the Second Circuit on this point is clear. Administrative priority will be afforded under Section 503(b)(1)(A) only if the subject claim arose "out of a transaction between the creditor and the ... debtor in possession" and "only to the extent that the

consideration supporting the claimant's right to payment was ... beneficial to the debtor in possession in the operation of the business" *Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986) (quoting in part *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir. 1976)); *accord In re Chateaugay Corporation,* 10 F.3d 944, 956 (2d Cir.1993).

In *McFarlin's* the Second Circuit denied administrative priority for pension fund "withdrawal liability" upon a finding that the consideration supporting the withdrawal liability was the human labor furnished by employees exclusively in the pre-petition period. In establishing a clear rule distinguishing between pre- and post-petition consideration, the Court endorsed and heavily relied upon the analysis of the First Circuit in *Mammoth Mart.* Although *Mammoth Mart* was decided under Section 64a(1) of the 1898 Bankruptcy Act, 11 U.S.C. § 104(a)(1) (repealed)[2], the Second Circuit followed the Seventh Circuit's *Jartran* decision[3] in finding that judicial interpretations of Bankruptcy Act Section 64a(1) are relevant to constructions of Bankruptcy Code Section 503(b)(1)(A). The Second Circuit has taken this position despite the fact that Bankruptcy Act Section 64a(1) explicitly limited allowable estate preservation expenses to those incurred subsequent to the petition date, whereas Section 503(b)(1)(A) does not contain such a *blanket* limitation.[4]

---

2. Section 64a provided in relevant part as follows:

> The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate *subsequent to filing the petition* ...

(emphasis supplied).

3. *Matter of Jartran, Inc.,* 732 F.2d 584 (7th Cir. 1984).

4. Were this Court writing on a blank slate, it might well conclude from the sentence structure of Section 503(b)(1)(A) that administrative priority under that section is not necessarily limited to costs and expenses incurred *after* the commencement of a bankruptcy case. The term "after the commencement of the case" clearly modifies

only the clause "including wages, salaries, or commissions for services ...", not the clause "the actual, necessary costs and expenses of preserving the estate ..."

Such a conclusion would find support in recent United States Supreme Court authority employing a strict approach to construction of the Bankruptcy Code. *See e.g., Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). *But see Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Further, this view is not at odds with the legislative history, which simply states, in relevant part, that subsection (b) "is derived mainly from section 64a(1) of the Bankruptcy Act, with some changes." Senate Report No. 95–989, July 14, 1978, p. 66 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5852; House Report No. 95–595, September 8, 1977, p. 355 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6311. This scant history does not suggest a "clearly expressed legislative intent contrary to the plain

▮ It is stipulated that the sale of the Chemicals was procured by the Debtor, and the Chemicals were in fact delivered to an agent of the Debtor, prior to the actual time of filing of the voluntary petition in this case.[5] Therefore, there is no issue as to the material fact of whether the subject sale was a transaction with the Debtor–in–Possession. It was not. This is true because, as a matter of law, in a voluntary Chapter 11 case, a debtor-in-possession comes into existence only after the filing of a petition. *See* 11 U.S.C. §§ 1101(1), 101(13). The second conjunctive prong of the *McFarlin's* test—whether the Chemicals were necessary or beneficial to the preservation of the estate—need not even be considered at this time in light of Vanco's apparent failure to satisfy the first prong—a transaction with the Debtor–in–Possession.

Accordingly, unless this Court agrees to indulge the legal fiction of non-fractionalization of dates, as urged by Vanco, it can only conclude that insofar as relief is requested under Section 503(b)(1)(A), Vanco's Payment Motion must fail under the law of this Circuit.

### 2. Fractionalizing of Dates.

Despite the actual pre-petition nature of its claim, Vanco urges the Court not to "fractionalize" the Petition Date into pre- and post-petition segments, but instead to deem that entire day as post-petition for purposes of a Section 503(b)(1)(A) analysis. Vanco argues that such temporal gerrymandering is appropriate under the equities of this particular matter. The Court reads Vanco's argument to specifically allege that the Debtor purposely and fraudulently jockeyed the date of delivery of the Chemicals so that it would have the benefit of the proceeds of those goods post-petition without a concomitant enforceable obligation for payment, other than

the necessity of treating Vanco's general unsecured claim in a plan of reorganization. As a result Vanco asserts, the facts concerning the Debtor's pre-petition conduct are material and at issue, thereby defeating the present summary judgment motion.

It should be stated preliminarily that this Court treats Vanco's allegations of misconduct and fraud as serious matters for which, if true, there should be an available remedy. However, the narrow question posed on the present record is whether, as a matter of law, non-fractionalization of the Petition Date is the appropriate remedy.

▮ On occasion, the United States Supreme Court has stated the general received common-law rule that individual days should not be fractionalized. *See e.g., United States v. Will,* 449 U.S. 200, 225 n. 29, 101 S.Ct. 471, 485 n. 29, 66 L.Ed.2d 392 (1980). Yet, the "rule" is subject to ready exception "whenever it becomes important to the ends of justice, or in order to decide upon conflicting interests ..." *Id.* (quoting *Louisville v. Portsmouth Savings Bank,* 104 U.S. 469, 474, 26 L.Ed. 775 (1881) (quoting *Grosvenor v. Magill,* 37 Ill. 239, 240–41 (1865))). Under such circumstances "the law will look into fractions of a day, as readily as into fractions of any other unit of time. The law is not made of ... unreasonable and arbitrary rules" *Louisville v. Portsmouth Savings Bank,* 104 U.S. 469, 475, 26 L.Ed. 775 (1881).

▮ As a sister court has observed, "[a]lthough fractions of a day are generally disregarded in court proceedings, they are scrupulously observed in determining the claims of rival creditors and in related matters pertaining to debtor-creditor relationships." *In re Monzon,* 27 B.R. 50, 51 (Bankr.S.D.Fla. 1983) (citing 74 Am.Jur.2d, *Time* § 13). Moreover, the fractionalization approach is

---

language" of the statute. *Toibb v. Radloff, supra* 501 U.S. at 162, 111 S.Ct. at 2200 (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

**5.** Under the Uniform Commercial Code, as enacted in Connecticut, the Chemicals' sale transaction was complete prior to the filing of the Debtor's bankruptcy petition. It is stipulated

that the Chemicals were delivered to the agreed place for delivery prior to the filing of the petition. Such delivery constituted "tender of delivery" under C.G.S. § 42a–2–503, entitling Vanco to acceptance of the Chemicals and payment according to the parties' contract. C.G.S. § 42a–2–507(1); *see also* C.G.S. § 42a–2–310(a). Further, at the time of delivery, title to the Chemicals passed from Vanco to the Debtor. C.G.S. § 42a–2–401(2).

uniformly utilized in a wide range of Bankruptcy Code disputes involving temporal concepts. *See e.g., Craddock–Terry Shoe Corp. v. Crestar Bank (In re Craddock–Terry Shoe Corp.)*, 91 B.R. 392, 395–6 (Bankr.W.D.Va. 1988) (involving setoff recovery under Section 553(b)); *Ducker v. Fairmeadows II (In re Bridges Enterprises, Inc.)*, 62 B.R. 300, 302 (Bankr.S.D.Ohio 1986) (involving post-petition transaction avoidance under Section 549); *Energy Cooperative, Inc. v. Murphy Oil Company (In re Energy Cooperative, Inc.)*, 32 B.R. 680, 682–83 (Bankr.N.D.Ill. 1983) (involving determination of setoff amounts under Section 553(a)); *In re Monzon, supra* (involving exemption entitlement).

There are at least two reported decisions employing a date fractionalization methodology to administrative claim determination. *In re John Clay and Company, Inc.*, 43 B.R. 797, 808 (Bankr.D.Utah 1984); *In re Holiday Meat Packing Inc.*, 30 B.R. 737, 740 (Bankr. W.D.Pa.1983). Vanco has not cited, and the Court has not independently located, any decisions rejecting date fractionalization when determining administrative priority.

■ In view of the overwhelming authority supporting date fractionalization in matters such as that at bar, this Court will sanction Vanco's non-fractionalization approach only if (1) such approach is susceptible of effective limitation, and (2) Vanco neither had nor has another legal or equitable remedy available to address the intentional misconduct alleged. In the present case, neither condition is satisfied.

If courts were to indulge non-fractionalization of dates to create "equitable" administrative priority where pre-petition debtor misconduct was demonstrated, there would be no logical stopping point to the doctrine since, as the Supreme Court has appropriately observed, "[t]here is no indivisible unity about a day ... any more than about a month ..." *Louisville v. Savings Bank, supra*, 104 U.S. at 475. What would prevent

the Court from entertaining a request for administrative priority claim status for trade debt arising a month or even longer (depending upon credit terms and the debtor's bankruptcy foresight) before the filing of a bankruptcy petition? If Congress intended courts of bankruptcy jurisdiction to possess the power to create equitable administrative priority at all, this Court does not believe that it intended that power to be exercised in such a boundless manner, particularly in light of the other available remedies discussed *infra*.[6]

Further, the Court believes that Vanco had, and may still have, other available remedies to address the specific Debtor misconduct alleged. Those remedies include reclamation and the imposition of a constructive trust.

### 3. Subversion of Reclamation Rights.

■ As an alternative ground for administrative priority treatment of its claim, Vanco argues that it was "deprived" of the right to seek reclamation of the Chemicals by the "unilateral failure of the debtor or debtor's counsel to notify [it] of the [bankruptcy] filing, whence [sic] it occurred." Memorandum of Law in Opposition to Trustee's Motion for Summary Judgment, p. 6.

Vanco has stated, and, for the purposes of this matter, this Court will treat as undisputed, the fact that Vanco did not receive notice of the Debtor's bankruptcy filing "until several weeks" following the Petition Date. *See* Vanco Statement of Facts Pursuant to Local District Court Rule 9(c)2, ¶ 6. This delay, Vanco claims, denied it the opportunity to seek reclamation of the Chemicals, presumably since in-kind reclamation is extinguished by, *inter alia*, 11 U.S.C. § 546(c)(1) if written demand is not made within ten (10) days of a debtor's receipt of the subject goods. Vanco concludes that Section 546(c)(2) provides an administrative claim where reclamation has been so denied.

---

**6.** Even if this Court were to resist fractionalizing the Petition Date, there remain certain conceptual hurdles in achieving Vanco's desired result. For instance, does the resulting "unitary" Petition Date necessarily fall into the post-petition period, even though most of its constituent hours elapsed prior to the filing of the Petition? Further, is non-fractionalization truly helpful to Vanco under the Section 503(b)(1)(A) since the touchstone under that standard, as formulated by the Second Circuit in *McFarlin's*, is a transaction with the debtor-in-possession?

Vanco's argument must fail for at least two reasons. First, the plain language of Section 546(c)(2) permits the granting of an administrative claim only upon the *Court's* denial of reclamation to a creditor *who has made a reclamation demand.* In this case Vanco claims that the Debtor, not the Court, denied it the right to in-kind reclamation; and Vanco also admits that it never made a reclamation demand.

■ Second, even taking Vanco's assertion of facts as true, the conduct of the Debtor alleged thereby did not subvert Vanco's right to reclaim the Chemicals. This is true because a creditor's right to reclaim goods is a state law right which Section 546 modifies slightly for the purposes of bankruptcy case administration. Under Connecticut law, the right to reclaim ripens upon the creditor-seller's discovery of the buyer-debtor's *insolvency,* not the institution of a bankruptcy case. C.G.S. 42a–2–702(2). While bankruptcy often implies insolvency, it is by no means necessarily so. Further, the law does not impose an affirmative duty on a buyer to advise a seller of such buyer's solvency, or lack thereof.[7] Accordingly, while early notice of the Debtor's bankruptcy filing may have been informative to Vanco—prompting an investigation of the Debtor's solvency for reclamation purposes—it was not required under either C.G.S. § 42a–2–702 or Section 546(c).[8] This is true even if the Debtor intentionally delayed the mailing of bankruptcy notice.[9]

In sum, as to Vanco's alleged loss of its reclamation right through Debtor misconduct, the Court finds no material facts at issue and concludes against Vanco's position as a matter of law.

## C. Constructive Trust Analysis.

■ As noted earlier, neither party to this matter raised in their respective memoranda of law, or in initial argument at the Hearing, the possible application and relevance of constructive trust theory to the issues at bar. On the Court's initiative, the parties each prepared, filed and served post-hearing memoranda of law addressing the applicability of constructive trust theory to this matter. In addition, the Trustee submitted a Statement regarding his present ability to "trace" the actual monetary proceeds of the Debtor–in–Possession's sale of the Chemicals.

■ The Second Circuit Court of Appeals observed in *In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (1989) (recognizing and applying a constructive trust under New Jersey law), that 11 U.S.C. § 541(b)(1) excludes from a bankruptcy estate property of others held by the debtor in trust at the time of the filing of the petition; and that a constructive trust thereby confers on its beneficiary an equitable interest in the trust res which is superior to that of a bankruptcy trustee. Whether a constructive trust exists, however, is purely a matter of state law. *Id.*

7. If, however, an affirmative written misrepresentation of solvency is made within three months prior to the subject delivery, the seller is relieved of the requirement of demand within ten days following delivery. C.G.S. § 42a–2–702(2).

8. In this regard the Court notes a curious lack of precision in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *Compare* 11 U.S.C. § 342(a) and Fed.R.Bank.P. 2002(a)(1), (d)(1), (f)(1), 2003(a), 2015(a)(4). Under this web of legislation and rulemaking, the first required general notice which would apprise a creditor of the pendency of a bankruptcy case is the notice of the first meeting of creditors, which, in this District, must be served by a Chapter 11 debtor not later than twenty (20) days prior to the meeting date. In this case, the first meeting of creditors was initially scheduled for December 10, 1992. Thus, the Debtor was required to

complete service of such notice by November 19, 1992, at the latest—a date by which Vanco's in-kind reclamation rights would already have been defeated. Although Fed.R.Bank.P. 2015(a)(4) requires "notice of the case" "as soon as possible after the commencement of the case" to certain classes of parties, those classes do not include potential reclaiming sellers, or creditors generally.

9. This is not to say that other serious consequences will not attend a *debtor's* negligent, reckless or intentional failure to abide by court directive and/or other legal obligation regarding timely service of due notice. The Court merely holds that a creditor with an allegedly subverted reclamation claim is not necessarily an appropriate beneficiary of any sanctions directed at a debtor for such defalcation.

Connecticut case law discussing constructive trusts is not extensive. Perhaps the clearest statement of that law was articulated by the Connecticut Supreme Court in *Zack v. Guzauskas,* 171 Conn. 98, 103, 368 A.2d 193 (1976) (quoting 76 Am.Jur.2d, Trusts § 221, p. 446):

> a constructive trust arises ... against one, who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds legal title to property which he ought not, in equity and good conscience, hold and enjoy.

Assuming the constructive trust issue were properly presented for decision in this contested matter, this Court concludes that summary judgment for the Trustee would not be appropriate since there are non-frivolous allegations of fact made by Vanco which could establish a record of misconduct sufficient to recognize and apply a constructive trust. However, the Court is convinced by the Trustee's argument that the present contested matter (*i.e.* administrative claim determination) is not an appropriate procedural vehicle for Vanco's assertion of a constructive trust.

An action to recognize and apply a constructive trust is a proceeding to "recover money or property", to "determine the validity, priority, or extent of an interest in property" and/or to "obtain ... equitable relief", and must therefore be prosecuted as an adversary proceeding, with its attendant procedural formalities and safeguards as afforded by Part VII of the Federal Rules of Bankruptcy Procedure. Fed.R.Bankr.P. 7001; *see In the Matter of Haber Oil Co., Inc.,* 12 F.3d 426, 437 (5th Cir.1994). Further, the Court agrees with the Trustee's observation that the assertion of a constructive trust is inconsistent with the very nature of the relief requested by the Payment Motion.

Given the Court's foregoing disposition of the constructive trust issue, it is unnecessary to address at this time the Trustee's further arguments concerning "tracing" and the possible preclusive effect of the Plan confirmation order in this case. The Court expresses no opinion with respect to the merit of those arguments. Such issues are properly reserved until the time of any adversary proceeding commenced to determine the constructive trust issue.

## V. CONCLUSION

Because there is no genuine issue as to any fact material to the contested matter at bar, and because the Trustee is entitled to prevail as a matter of law, summary judgment in his favor is appropriate. However, in view of all of the circumstances surrounding this matter, it is also just and equitable that Vanco be granted brief leave to commence an adversary proceeding to recognize and apply a constructive trust in its favor. An appropriate order shall enter in connection herewith.