## FLORENCE S. MILESTAN *v.* VINCENT TISI

BALDWIN, INGLIS, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued October 8—decided December 8, 1953

*George J. Yudkin*, with whom was *Harold B. Yudkin*, for the appellant (defendant).

*David R. Lessler*, for the appellee (plaintiff).

O'SULLIVAN, J. The finding recites the following unchallenged facts: Early in 1946, the plaintiff, Mrs. Milestan, arranged to buy a house and lot located in Bridgeport. The price of $5100 was to be met by a down payment of $500 in cash and a purchase money mortgage for the balance. Mrs. Milestan was told by the agent with whom she dealt that the owner, the

federal housing authority, would not accept a mortgage from her because she was not gainfully employed. He suggested that, since her husband had a job, title should be taken in his name and that after executing the mortgage Milestan could quitclaim the property to her. This plan was carried out. The closing took place on March 25, 1946, in the office of the owner's attorney. After Mrs. Milestan had made the $500 down payment from her own funds a warranty deed from the owner to Milestan and a mortgage deed from Milestan to the owner were executed. Milestan then executed and delivered to his wife the quitclaim deed which the attorney had drafted. On March 26, 1946, the warranty deed and the mortgage deed were recorded on the Bridgeport land records. Mrs. Milestan took the quitclaim deed home and kept it there until October 6, 1948, when she gave it to the Bridgeport town clerk for recording.

During the summer of 1948, Milestan had indorsed a note payable to the order of the defendant Tisi, and, upon its nonpayment, Tisi brought suit against him by writ returnable to the Court of Common Pleas in Fairfield County on the first Tuesday of November, 1948. We shall refer to that suit as case No. 49870. At that time, Mrs. Milestan had not as yet recorded her quitclaim deed, and the property which she owned stood on the land records in her husband's name. The sheriff engaged to make service in case No. 49870 filed, in the office of the town clerk at Bridgeport, a certificate of attachment dated September 22, 1948, against the property but neglected, upon the subsequently filed certified copy of the process authorizing him to make the attachment, to make a full indorsement of his doings. On February 11, 1949, Tisi obtained judgment in case No. 49870 for $2611.20 and costs. On March 17, 1949, he

filed a judgment lien on the land records, setting forth that the original attachment had been recorded on September 22, 1948.

On March 30, 1949, Tisi instituted an action against Mrs. Milestan in the Court of Common Pleas in Fairfield County to foreclose the judgment lien. We shall refer to that action as case No. 50903. Personal service was made upon Mrs. Milestan. She failed to enter an appearance and suffered a default. On June 10, 1949, the court rendered judgment of strict foreclosure, fixing the debt and setting August 1, 1949, as her law day, with title to become absolute in Tisi upon the following day.

By a letter dated July 6, 1949, and sent by direction of the court, Mrs. Milestan was informed of the judgment entered against her on June 10, 1949. Her husband then began to hold, with Tisi's attorney, a series of conferences which on August 1, 1949, culminated in an arrangement whereby Mrs. Milestan was to pay the judgment debt in instalments. When the debt was paid in full, title to the property was to be retransferred by Tisi to Mrs. Milestan. In the meantime, she was to occupy the premises as long as she was not in default under the terms of the arrangement. By January 22, 1951, payments totaling $1540 were made to Tisi's attorney. Up to the same date, Mrs. Milestan also reduced by $1000 the mortgage indebtedness to the housing authority, and she paid out other substantial sums of money for taxes, insurance and repairs.

At times Mrs. Milestan became in default with her payments to Tisi and, whenever that occurred, threats of eviction were made to her. In the latter part of April, 1952, she was again in default. At that time, Tisi's attorney informed her that he would have her evicted on May 1 unless the balance due on the

judgment was paid in full by that date. When the demanded payment was not forthcoming, the attorney applied to the court in case No. 50903 for an execution in order to obtain possession of the premises. That application prompted the institution of the case at bar.

The complaint is in two counts. Upon the first, the plaintiff sought both a declaratory judgment determining the rights of the parties under an existing judgment of foreclosure in a prior action and an injunction to restrain the defendant from enforcing that judgment. Upon the second count, the plaintiff sought a decree that the judgment of foreclosure in case No. 50903 be opened, that a new law day be set, and that such other relief be granted as equity should require. The court failed to render a declaratory judgment. It did, however, issue the requested injunction and also set aside the foreclosure judgment. It further gave the plaintiff permission to file a new defense to the complaint in the foreclosure action. From the judgment which the court thus rendered, the defendant appealed. We shall discuss only those assignments of error that are decisive of the appeal.

In bringing this action, Mrs. Milestan was trying to escape from the legal consequences of the judgment in case No. 50903. Several methods are available to a party seeking relief from a judgment. Of these, we mention only the two which Mrs. Milestan has pursued in the one suit. In the first place, a party may, within three years after the rendition of the judgment, bring a petition for a new trial. General Statutes § 8322. The court is authorized to grant the petition on any of the grounds set forth in § 8013. The grounds recited therein are mispleading, the discovery of new evidence, the want of actual notice of the suit, the lack of a reasonable opportunity to

appear and defend, and any "other reasonable cause." This last-mentioned ground includes every cause for which a court of equity could grant a new trial, such as, for example, fraud, accident and mistake. *Gonirenki* v. *American Steel & Wire Co.*, 106 Conn. 1, 5, 137 A. 26.

The court did not expressly order a new trial in the foreclosure action, although inferentially it did so, since it set the judgment aside in case No. 50903, reinstated the case on the docket and granted Mrs. Milestan permission to file a defense. This was erroneous. The proceedings for procuring new trials are governed by statute. *Etchells* v. *Wainwright,* 76 Conn. 534, 538, 57 A. 121. The finding shows the existence of none of the grounds for which a new trial could be granted under the provisions of § 8013. Indeed, the only allegation in the complaint which might indicate that Mrs. Milestan was seeking a new trial by force of § 8013 was that she had acted through mistake in making payments to Tisi's attorney after the judgment was rendered. Not only did the court fail to find such a mistake on her part but, even had it done so, the mistake, having been made subsequent to the judgment, could not have affected its rendition and hence would be unavailable as a ground for the court to set that judgment aside.

The second method pursued by Mrs. Milestan in attempting to avoid the effect of the judgment in case No. 50903 was by requesting equitable relief. This procedure is recognized as proper. *Perry* v. *M. M. Puklin Co.,* 100 Conn. 104, 109, 123 A. 28; *Blakeslee* v. *Murphy,* 44 Conn. 188, 193. By this method she was not asking for a new trial. Her objective was not to operate upon the judgment at all. *Chicago, R.I. & P. Ry. Co.* v. *Callicotte,* 267 F.

799, 810; 31 Am. Jur. 211, § 625. She sought only to restrain Tisi from enjoying the advantages to which the judgment entitled him. See *Miller* v. *McNamara,* 135 Conn. 489, 496, 66 A.2d 359; *Given's Appeal,* 121 Pa. 260, 265, 15 A. 468.

Mrs. Milestan's claims on this phase of the action are twofold. She maintains, first, that the judgment in case No. 50903 was null and void and that she is therefore entitled to be entirely relieved of its burden. To clarify her position, it must be noted that her interest in the real estate was foreclosed through the application of the provisions of § 7225 of the General Statutes. That section provides in part that if a judgment lien "be placed upon real estate attached in the suit upon which [the] judgment was predicated . . . it shall hold from the date of such attachment. . . ." Broadly stated, Mrs. Milestan's present claim is that her interest was immune from foreclosure because the attachment in case No. 49870, having been improperly made, was void, and therefore the judgment lien foreclosed in case No. 50903 could not relate back to a nullity. Thus, some of the complications giving rise to the litigation now before us had their origin in what the court found was a failure of the sheriff in case No. 49870 to comply with the statutory method for attaching real estate. General Statutes § 8025.[1] The parties concede—and we

---

[1] "Sec. 8025. ATTACHMENT OF REAL ESTATE. Real estate shall be attached by the officer by lodging in the office of the town clerk of the town in which it is situated a certificate that he has made such attachment, which shall be indorsed by the town clerk with a note of the precise time of its reception and kept on file, open to public inspection, in the office of such town clerk; and such attachment, if completed as hereinafter provided, shall be considered as made when such certificate shall have been so lodged. The certificate shall be signed by such officer, shall describe the land attached with reasonable certainty and shall specify the parties to the suit, the authority issuing the writ, the court to which the process is returnable and the amount of

accept their concession—that the indorsement on the certified copy of the writ and complaint filed with the town clerk in case No. 49870 was defective because it failed to state the fact of service upon Mrs. Milestan's husband.

A question, the answer to which goes far to resolve the claim now under discussion, is whether the defective indorsement rendered the attachment void or voidable. The answer is found in a construction of § 8025 of the General Statutes. In seeking to ascertain the legislative intent behind that section, we may with propriety look to the history of the statute. *State* v. *Cambria,* 137 Conn. 604, 606, 80 A.2d 516; see *Butchers' Ice & Supply Co.* v. *Bascom,* 109 Conn. 433, 437, 146 A. 843; *New Milford Security Co.* v. *Windham County National Bank,* 90 Conn. 323, 338, 97 A. 428.

The prototype of § 8025 was chapter 95 of the Public Acts of 1855. That chapter required, in substantially the same language as is embodied in the present statute, that the officer lodge a certificate of attachment in the town clerk's office and that he subsequently leave there a certified copy of the process with his doings indorsed thereon. The chapter did not set forth how the attachment would be affected by the officer's failure to comply with its provisions. To meet that deficiency, the General Assembly in 1861 passed an act providing that "no attachment of real estate . . . shall be valid unless such attachment shall be made in the manner pre-

damages claimed; and the officer shall, either within four days thereafter or within four days after service upon the defendant in such action, leave in the office of such town clerk a certified copy of the process under which the attachment was made, with an indorsement of his doings thereon; and, unless the service shall be so completed, such estate shall not be held against any other creditor or bona fide purchaser. . . ."

scribed in chapter ninety-fifth of the Public Acts of 1855." Public Acts, 1861, c. 63. When incorporating the latter act into the Revision of 1866, the General Assembly altered it to read that, unless the statutory requirements are carried out by the officer, the would-be attachment "shall not be holden against any other creditor or bona fide purchaser." Rev. 1866, p. 4, § 17. Other than by a change of the word "holden" to "held," the quoted provision has remained in every successive revision of the statutes, including that of 1949. § 8025.

The phraseology employed in incorporating the act of 1861 into the Revision of 1866 indicated a drastic change in legislative policy. Defective compliance with statutory requirements was no longer to render a real estate attachment invalid against the world. Henceforth, the attachment was, at the instance only of "any other creditor or bona fide purchaser," to be voidable rather than void. The court reached the conclusion that Mrs. Milestan qualified as a bona fide purchaser and, while this conclusion has been challenged by Tisi, the subordinate facts support it. *Andretta* v. *Fox New England Theatres, Inc.*, 113 Conn. 476, 482, 155 A. 848; *Hayden* v. *Charter Oak Driving Park*, 63 Conn. 142, 147, 27 A. 232.

As pointed out above, there is no finding that the foreclosure judgment was obtained by fraud or that it resulted from accident or mistake. Mrs. Milestan had an opportunity to enter in case No. 50903 and to file a defense attacking the validity of the attachment, as she could have successfully done. Instead of pursuing that course, she failed to appear, suffered a default and, on the basis of the unchallenged allegations of Tisi's complaint, permitted the court to determine her rights. In rendering judgment, the court adjudicated that she had no defense against

the enforcement of the lien. It is now too late for her to urge the invalidity of the attachment in case No. 49870. A new trial is not to be granted simply because a defendant neglected to file what would have constituted a good defense. *Palverari* v. *Finta,* 129 Conn. 38, 43, 26 A.2d 229.

The second claim advanced by Mrs. Milestan to support her position that she is entitled to equitable relief is predicated upon the attitude of the parties toward the foreclosure judgment subsequent to its rendition. On August 1, 1949, Mrs. Milestan arranged with Tisi's attorney to pay the judgment debt. She carried out her part of the bargain on sixty-one different occasions, paying in all the sum of $1540. In *Lounsbury* v. *Norton,* 59 Conn. 170, 177, 22 A. 153, we held that payments made upon a mortgage debt pursuant to an agreement and subsequent to the date title vested by foreclosure in the mortgagee operated to rehabilitate the mortgagor's right to redeem as fully as if the judgment of foreclosure had never been had. *Findlay* v. *Longe,* 81 Vt. 523, 529, 71 A. 829; Wiltsie, Mortgage Foreclosure (5th Ed.) § 1083. There is no difference in principle whether the action is brought to foreclose a mortgage or a judgment lien. In either instance, the parties may restore the right of redemption, as the conduct of the parties in the case at bar has done. On the basis of this equity, the court was justified in restraining Tisi from enforcing the judgment in case No. 50903 and from evicting Mrs. Milestan from her property. The matter, however, must be remanded for the sole purpose of determining the balance of the judgment debt in case No. 50903 and of fixing a new law day for Mrs. Milestan to redeem.

There is error, the judgment is set aside and the matter is remanded with direction to determine the

balance of Mrs. Milestan's indebtedness to Tisi, to fix a date before which she shall pay that balance, with a mandate to Tisi to reconvey title to her upon receipt of the payment, and to enjoin Tisi from enforcing the judgment in case No. 50903 unless Mrs. Milestan shall fail to pay the balance found to be due.

In this opinion the other judges concurred.