**CHEMICAL BANK**

v.

**Jeanne Marie DANA, et al.**

**No. Civ. 5:92CV341 (HBF).**

United States District Court,
D. Connecticut.

March 31, 1999.

Marshall Goldberg, Monroe Silverman, Steven M. Frederick, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, for Chemical Bank, plaintiff.

Christopher Michael Royston, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, Timothy D. Miltenberger, New Haven, CT, for Richard M. Coan, Trustee, Bankruptcy Estate of Connaught Prop, Inc, trustee.

Jeanne Marie Dana, Pro se.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

FITZSIMMONS, United States Magistrate Judge.

The issue before the Court is which party, Chemical Bank or the Bankruptcy Estate of Connaught Properties, Inc., has the superior claim to the proceeds from the sale of 26 Beach Avenue, Westport, Connecticut (the "Westport property"). Pending are cross motions for summary judgment. **[Doc. 343, 353]**.

### BACKGROUND FACTS

1. On or about April 25, 1997, the Court, after a trial by jury, entered judgment against defendant Jeanne Marie Dana in the amount of $1,451,951.30. This judgment reflected Dana's liability on a personal guarantee of the debts of Streets Ahead, Inc., a corporation which Dana owned and controlled. [Doc. # 344 ¶ 1].

2. The claim upon which this judgment was based arose in April 1990, when Chemical demanded payment from Dana pursuant to her guarantee. [Doc. # 344 ¶ 2].

3. On June 11, 1992, Chemical Bank commenced this action against Jeanne Marie Dana.

### The First Attachment

4. On June 30, 1992, after a hearing in which probable cause was found to sustain Chemical's claims against Dana, the Court (Cabranes, D.J.) granted Chemical a prejudgment attachment on the Westport property (the "First Attachment") in the amount of $862,161.25. [Doc. # 344 ¶ 10].

5. During the attachment hearing, Judge Cabranes told Dana that "the order as entered by the Court ... will have the effect of attaching the property in Westport, Connecticut...." [Doc. # 344 ¶ 11].

6. The First Attachment was recorded on the Westport Land Records on July 1, 1992. [Doc. # 344 ¶ 12].

7. On July 30, 1992, less than 30 days after the First Attachment was recorded, Dana conveyed the Westport Property to Connaught. [Doc. # 344, ¶ 3, 13].

8. At the time of this transfer, the Westport property had a market value between $3.5 million and $5 million. [Doc. # 344 ¶ 4].

9. There was no consideration paid by Connaught for the Westport property relative to the July 30, 1992 transfer. [Doc. # 344 ¶ 5].

### The Second Attachment

10. On August 12, 1994, the Court (Martinez, M.J.) issued an order allowing Chemical to attach Dana's interest in the Westport property in the amount of $976,043.80 (the "Second Attachment"). [Doc. # 344 ¶ 17].

11. Chemical recorded evidence of its Second Attachment on the Westport Land Records on August 15, 1994. [Doc. # 344 ¶ 18].

12. On September 12, 1994, Chemical Bank amended its complaint to add Connaught Properties, Inc. as a defendant. [Stip. at ¶ 3].

13. On September 23, 1994, Connaught filed for protection under 11 U.S.C. § 301, and an order for relief under the United States Bankruptcy Code entered on that date. [Doc. # 355 ¶ 16].

14. Under an order dated October 26, 1994, the Connaught Bankruptcy Estate sold the Westport property for approximately $4,240,000. [Doc. # 355 ¶ 20].

15. In November 1994, Chemical filed a proof of claim against the Connaught Bankruptcy Estate in the amount of $976,043.80. [Doc. # 355 ¶ 24].

*RULINGS OF THE COURT*

The Westport property has been the subject of several rulings by the Court.

On February 25, 1994, Jeanne Marie Dana moved to dismiss the prejudgment remedy entered in June 1992. [Doc. # 67]. This motion was denied on June 24, 1994 (Eginton, D.J.). [Doc. # 88]. On July 19, 1994, Dana moved for reconsideration [Doc. # 89], contending that the court overlooked her arguments pertaining to plaintiff's alleged failures to comply with the requirements of Conn.Gen.Stat. §§ 52–278j, 52–280 and 52–285. Dana argued that these failures rendered the First Attachment void. Upon reconsideration, on March 31, 1995, the Court (Eginton, D.J.) found that Dana had actual notice of the PJR attachment, that the order was filed on the Westport Land Records effectuating an attachment and that abode service of the attachment was made. Last, the Court found that Dana's argument of defective compliance under Conn.Gen.Stat. § 52–285 was unavailing, stating

> In *Milestan,* the Court found that noncompliance with the requirements of § 52–285 does not render the attachment invalid against the world: the attachment is voidable, rather than void, at the instance only of any other creditor or bona fide purchaser. *Milestan* at 470, 101 A.2d 504. Dana, the only party in this action attacking the validity of the attachment, is neither a creditor nor a bona fide purchaser.

[Doc. # 167 at 3].

On January 5, 1996, this Court granted plaintiff's motion for summary judgment, dismissing Connaught Properties' third counterclaim which asserted that Connaught was at all relevant times the beneficial owner of the Westport property, and that Chemical's attachment of Dana's interest in the property was unenforceable. [Doc. # 236]. The Court found the following undisputed facts.

1. On April 15, 1987, title to the Westport property was transferred from Centigon, Inc., a Connecticut corporation, to Jeanne Marie Dana, individually, and as trustee to Pilar Janine Dana. On April 15, 1987, Jeanne Marie Dana, individually and as trustee for Pilar Janine Dana, conveyed the Westport property to Connaught Properties, Inc. by quitclaim deed.

2. On April 29, 1992, in the action of *Banque Paribas v. Dana,* Civ. No. B–89–126 (JAC), then District Court Judge Cabranes found that,

> 20. Mrs. Dana owns and controls Connaught. Indeed, counsel for Connaught has stated that throughout this litigation that his client has acted exclusively through Mrs. Dana and that he has never had any substantive contact with any other officer or employee of Connaught. Connaught did not make a good faith effort to produce documents in its possession, custody or control.
>
> 21. Despite orders of the court to do so, defendants did not produce any evidence as to the creation, existence or maintenance of the trust for the benefit of Pilar Janine Dana, of which Mrs. Dana claims to be trustee. Defendants shall therefore be precluded from asserting the existence of such a trust as against plaintiff.
>
> 22. The Westport house is accordingly deemed and declared to have been conveyed by Mrs. Dana to Connaught in her individual capacity as sole owner of the property (and not as trustee for any purported trust).

Judge Cabranes further held,

> The court having made the foregoing findings of fact, it is hereby ORDERED, ADJUDGED AN DECREED that, pursuant to Fed.Rule Civ.P. 37(b)(2)(C) and the inherent power of the court, the joint answer of defendants, Jeanne Marie Dana ... be and hereby is stricken; and it is further
>
> ORDERED, ADJUDGED AND DECREED, that pursuant to Fed.Rule

Civ.P. 37(b)(2)(C) and the inherent power of this court, judgment on this Fourth Claim of the Complaint be entered forthwith in favor of plaintiff, Banque Paribas, setting aside and declaring null and void as to the parties to this action the purported April 15, 1987, conveyance by Jeanne Marie Dana individually, and as trustee for Pilar Janine Dana, to Connaught Properties, Inc. of the real property described in the quitclaim deed annexed hereto, which purported conveyance is recorded in the Land Records of the Town of Westport at Book 876 Page 071–72; and it is further ORDERED, ADJUDGED AND DECREED that the title to the real property located at 26 Beachside Avenue in Westport, Connecticut, and more particularly described in the quitclaim deed annexed hereto, be and hereby is vested as between the parties to this action in Jeanne Marie Dana individually (and not as trustee of any purported trust); and it is further·

ORDERED, ADJUDGED AND DECREED that the judgment entered in accordance with this Order relates back to the attachment on the real property located at 26 Beachside Avenue in Westport, Connecticut, and more particularly described in the attached quitclaim deed, dated March 16, 1989, and recorded in the Land Records of the Town of Westport at Book 966 Page 299, by virtue of a judgment against Mrs. Dana entered by this court dated November 21, 1990, which was reduced to a judgment lien dated January 17, 1991, filed within 4 months and recorded at Book 1086 Page 0119, which relates back to the attachment dated March 16, 1989, and recorded at Book 966 Page 299; and it is further

ORDERED, ADJUDGED AND DECREED, that defendant, Jeanne Marie Dana, a/k/a Jeanne Peters, a/k/a J. Martin Dana, a/k/a Patricia Delafield, and a/k/a Mrs. Ashton Sloane, shall execute and deliver to the Town Clerk of Westport, Connecticut, and any other appropriate party, any documents, including but not limited to deed, and shall do such other acts, as may reasonably be required to carry out and effectuate this Order and any judgment entered hereto.

3. On May 11, 1992, Connaught Properties, Inc. transferred by Quit Claim Deed "all right, title, interest, claim and demand whatsoever" in the Westport property to Jeanne Marie Dana "pursuant to a judgment entered by the clerk of the United States District Court, District of Connecticut, on April 29, 1992, in an action entitled *Banque Paribas v. Jeanne Marie Dana, a/k/a Jeanne Peters, a/k/a J. Martin Dana, a/k/a Patricia Delafield, a/k/a Mrs. Ashton Sloane and Connaught Properties Inc.*, Civil Action No. B–89–126 (JAC)." The deed was recorded in the Westport Land records, on May 14, 1992, at Book 1157 Page 017.

4. On June 11, 1992, Chemical Bank filed this action against Jeanne Marie Dana, for money owed under her personal guarantee of the Streets Ahead loan.

5. At the hearing on Chemical's Application for Prejudgment Remedy, on June 30, 1992, Judge Cabranes stated,

[L]et me try to state for Ms. Dana's benefit and for the record what I understand this matter may be about.

In this action, the plaintiff whom you represent, Chemical Bank, alleges that the defendant, Jeanne–Marie Dana, personally guaranteed a loan of Streets Ahead, Inc., which we'll call "Streets," a corporation wholly owned by Mrs. Dana. Chemical advanced 570,000 Pounds Sterling to Streets to acquire certain real property in London, England.

Because of a default in the payment of interest required under a promissory note, Chemical caused the entire amount due and proceeded under the laws of England to foreclose upon the London property. Chemical then sold the property. After crediting the proceeds of the sale of the property to the balance due under the note, the sum of $862,161.95 remains due to Chemical, according to Chemical's papers.

Judge Cabranes found probable cause to sustain the validity of plaintiff's claim, granted Chemical's Application for Prejudgment Remedy and ordered an attachment in the amount of $ 862,161.25 on the Westport property.

6. On July 17, 1992, in the *Paribas* action, Judge Cabranes "granted upon consent of the parties" Dana's Motion to Dissolve and Vacate the Injunction of June 11, 1992, "enjoining ... Dana from selling, transferring, encumbering or otherwise in any manner, directly or indirectly, conveying or diverting real property owned by her at 26 Beachside" Avenue, Westport, Connecticut.

7. On July 30, 1992, Dana transferred, by quit claim deed, all of her right, title and interest in the Westport property to Connaught.

8. On August 26, 1992, Connaught transferred, by quit claim deed, its right, title and interest to James A. Miller as Trustee.

9. On September 28, 1992, the parties in *Paribas* "stipulated, consented to and agreed that this Court's judgment dated April 29, 1992, striking defendants' answers and entering judgment on count IV of the complaint in favor of plaintiff, be, and it hereby is, vacated." Judge Cabranes endorsed the stipulation, "approved, upon consent of the parties."

In granting summary judgment, the Court held that there was "no basis for finding that Dana was not the owner of the Westport property at the time Judge Cabranes ordered the attachment in June, 1992." [Doc. # 236 at 7].

### UNDISPUTED FACTS

1. On June 11, 1992, Chemical Bank commenced this action against Jeanne Marie Dana.

2. On June 11, 1992, Judge Cabranes entered an injunction against Dana and on behalf of Banque Paribas enjoining Dana from transferring the Westport property without prior order of the Court. [Stip. ¶ 21].

*Dana's Insolvency*

3. On or about July 26, 1991, one year prior to her conveyance of the Westport property to Connaught, Dana executed, "under penalty of perjury," a bankruptcy petition which was filed in the United States Bankruptcy Court for the Southern District of New York. In that petition, Dana swore that she had $1,373,000 in assets and $4,577,408 in liabilities. [Doc. # 344 ¶ 6].

4. Dana did not earn any income from any sources in either 1991 or 1992. [Doc. # 344 ¶ 7].

5. At the time of her conveyance of the Westport property to Connaught, Dana was insolvent in that her liabilities exceeded her assets. [Doc. # 344 ¶ 8].

6. Dana "owned and controlled Connaught" at all relevant times. [Doc. # 344 ¶ 9].

*Existence of Debt*

7. At the PJR hearing on June 30, 1992, Chemical sought an PJR for interest which it represented to be accruing at the rate of $270 a day, or approximately $98,000 per year, on the Streets indebtedness of $862,161.95. Chemical sought an additional $250,000 in interest that it contended would accrue if the case remained pending for over two years. Judge Cabranes denied this request, stating "I am prepared to entertain an application for a modifica-

tion upward of this order in due course, but I would think we would wait, at a minimum, for a month on that, and that we would do it on a month by month basis. And I'd be happy to do that. But I don't think we should take the extraordinary step of projecting forward a full year." [Pl. Ex. J at 15–17].

8. Dana transferred the Westport property to Connaught on July 30, 1992.

### CHEMICAL'S MOTION FOR SUMMARY JUDGMENT

Chemical argues that Dana's conveyance of the Westport property in July 1992 was fraudulent as a matter of law and that summary judgment should enter in favor of Chemical on Count Two of its Third Amended Complaint.[1] Plaintiff further moves for summary judgment as to each of the claims asserted by the bankruptcy trustee for the estate of defendant Connaught Properties, Inc. in Adversary Proceeding No. 97–3056.

## I. *COUNT TWO: FRAUDULENT CONVEYANCE*

Chemical argues that it is undisputed that "Connaught acquired whatever inter-

---

**1.** Count Two of the Third Amended Complaint states in relevant part that,

(17) On or about July 30, 1992, with knowledge of the attachment, Dana transferred all of her right, title and interest in the Connecticut premises to Connaught, a corporation owned and/or controlled by Dana (18) On or about August 26, 1992, Connaught acting through Dana and with knowledge of the attachment, caused title to the Connecticut Premises to be transferred to Miller as Trustee, who currently holds title to the Connecticut Premises as Trustee. (19) The transfers of the Connecticut Premises by Dana to Connaught, and by Connaught to Miller, were made under the direction or control of Dana and are fraudulent as to the plaintiff within the meaning of Connecticut General Statutes 52–552e as the plaintiff's claims against Dana arose before the transfers were made and the transfers were made with the actual intent to hinder, delay, or defraud creditors, including the plaintiff, in that among other indicia of a fraudulent conveyance:

est it had in the Westport property by virtue of a fraudulent conveyance." [Doc. 351 at 5].

■■■ "A conveyance is fraudulent if made with actual intent to avoid any debt or duty or if made without any substantial consideration by a person who is or will be thereby rendered insolvent." *Federal Deposit Ins. Corp. v. Isban,* 870 F.Supp. 24, 28 (D.Conn.1994) (quoting *Molitor v. Molitor,* 184 Conn. 530, 536, 440 A.2d 215 (1981)). "The party seeking to set aside a conveyance as fraudulent bears the burden of proving either (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his financial obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated." *Tyers v. Coma,* 214 Conn. 8, 11, 570 A.2d 186 (1990). "Thus, the plaintiff may succeed either by proving constructive fraud (i.e. a lack of substantial consideration and existing or resulting insolvency) or by proving actual fraud; the plaintiff need not satisfy both alternatives." *In re Andersen,* 166 B.R. 516, 524 (Bankr.D.Conn.1994). (internal quotation

a) the transfers were to an insider;
b) Dana retained possession or control of the Connecticut Premises after the transfers;
c) the transfers were made with full knowledge of the plaintiff's lawsuit and attachment;
d) upon information and belief, the transfers were of substantially all of Dana's assets;
e) Dana removed or concealed assets;
f) the value of the consideration received by Dana and Connaught was not reasonably equivalent to the value of the property transferred;
g) upon information and belief, Dana was insolvent or became insolvent shortly after the transfers were made;
h) the transfers occurred shortly after a substantial debt or lien was incurred.
. . . . .
[Doc. # 149 5–8].

marks and citation omitted). "Under either alternative, the plaintiff bears the burden of proof." *Id.*

■ "A person is insolvent for these purposes when he is unable to pay his then-existing debts." *Molitor,* 184 Conn. at 536, 440 A.2d 215 However, "insolvency is not a necessary element of a fraudulent conveyance under Connecticut law if the second alternative is proved; rather, a conveyance is fraudulent if motivated by a desire to circumvent any debt or duty." *Rocklen, Inc. v. Radulesco,* 10 Conn.App. 271, 278, 522 A.2d 846 (1987); *Tyers,* 214 Conn. at 11, 570 A.2d 186.

■ The determination of whether a conveyance is fraudulent is a question of fact which must be proved by "clear, precise and unequivocal" evidence. *Tyers,* 214 Conn. at 11, 570 A.2d 186; *Federal Deposit Insurance Corp. v. Isban,* 870 F.Supp. 24, 28 (D.Conn.1994).

*Constructive Fraud*

Connecticut General Statute § 52–552f(a) provides

> A transfer made ... by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made ... if the debtor made the transfer .. Without receiving a reasonably equivalent value in exchange for the transfer ... and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer....

1. *The claim arose before the transfer.*

■ Chemical argues, and the Court agrees, that the record establishes that its claim against Dana clearly arose prior to the July 30, 1992 conveyance. First, Chemical made its initial demand for payment of the Street's debt in April 1990. [Pl.Ex. A]. Chemical filed the lawsuit on June 11, 1992. On June 30, 1992, the Court found probable cause to sustain a prejudgment attachment in the amount of $862,161.25 on the Westport property. [Pl.Ex. H]. Dana transferred the Westport property to Connaught on July 30, 1992. [Pl.Ex. B]. Defendant offers no evidence to dispute this finding.

2. *Dana did not receive reasonably equivalent value in exchange for her conveyance to Connaught*

■ Chemical next argues that there is no material issue of fact that Dana did not receive reasonably equivalent value in exchange for her conveyance to Connaught. The record establishes the following. Both Dana and Connaught have admitted that there was no consideration paid for the Westport property when it was transferred on July 30, 1992.[2] Indeed, both Dana and Connaught admit that neither paid consideration for the property or conveyance taxes relative to any of the transfers between them. The record further establishes that on April 15, 1987, Jeanne Marie Dana individually, and as trustee for Pilar Janine Dana transferred the Westport property to Connaught by quitclaim deed for no consideration. [Pl.Ex. C, No. 7, Pl.Ex. D, No. 6; Pl.Ex. F at 12–13]. On April 29, 1992, Judge Cabranes, in the *Banque Paribas* case, set aside and declared null and void the "purported" April 15, 1987 conveyance and ordered that the title in the Westport property be vested in Jeanne Marie Dana individually "and not as a trustee of any purported trust." [Pl. Ex. F. at 12]. Judge Cabranes found that,

> Mrs. Dana owns and controls Connaught. Indeed, counsel for Connaught has stated that throughout this litigation that his client has acted exclusively through Mrs. Dana and that he has never had any substantive contact with any other officer or employee of Connaught."].

...

August 21, 1995.

2. Pl.Ex. D, Connaught's Response No. 6 to Plaintiff's First Set of Interrogatories, dated

Mrs. Dana and Connaught have conducted themselves throughout this litigation with a scornful disregard of the judicial process ... The record of this case reveals nothing more nor less than that Mrs. Dana has evaded collection of a lawful debt in a manner indicating a contempt for the legal process and that her conduct compels, at long last clear and effective court action to vindicate not only the interests of an aggrieved plaintiff but also the interests of the justice system itself.

[Pl.Ex. F at 9–10, 11].

The Trustee argues that Dana "merely returned the property to the entity that had owned it for the previous five years" and that there was "no consideration for the July 31, 1992[sic] transfer to Connaught because there had been no consideration for the April 29, 1992 transfer from Connaught to Dana." [Doc. # 347 at 3–4]. However, these statements represent argument and not evidence and fail to address Judge Cabranes' ruling on this matter.

■ Although the Trustee argues that there is insufficient evidence to show that Dana did not receive reasonably equivalent value, he offers no evidence to support this argument. Under Connecticut law, "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied...." Conn.Gen.Stat. § 52–552d(a). "Value" is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors. Uniform Fraudulent Transfer Act § 3 cmt. 2. Dana and Connaught's acknowledgment that no consideration was tendered is undisputed. Dana also admitted that the market value of the Westport property at the time of the transfer from Dana to Connaught was between $3,500,000 and

$5,000,000.[3] [Pl.Ex. C No. 12]. Further, Dana transferred the Westport property within a month of the PJR attachment and after she was on notice by the Court that Chemical would seek an upward modification of the PJR attachment to secure the interest that was accruing. The Court concludes that the Trustee has not raised a material issue of fact on this element.

3. *Dana was insolvent at the time or as a result of the transfer.*

■ As evidence of insolvency, Chemical submits a copy of Dana's bankruptcy petition dated July 26, 1991, which states under penalty of perjury that she had $1,373,000 in assets and $4,577,408 in liabilities. [Pl.Ex. E]. Thus, in July 1991, Dana's liabilities exceeded her assets by $3,204,408. Chemical also appended Dana's sworn responses to interrogatories made in 1995, which state that she did not earn any income from any source in either 1991 or 1992. [Pl.Ex. C. No. 14]. *See* Conn.Gen.Stat. § 52–552c(a) ("A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.").

The Trustee argues that Dana's bankruptcy petition does not establish Dana's insolvency on the date of the conveyance of the Westport property. [Doc. # 347 at 5, subsection f]. However, Chemical has provided Dana's sworn interrogatory response in which she admits that her financial condition did not improve. The Trustee provides no evidence to create a disputed issue of fact on this claim.

Nevertheless, the Trustee contends that Chemical "has provided no evidence whatsoever for this Court to assess the likelihood that disputed claims are valid." [Doc. # 347 at 4–5 subsection(a)]. Even if the Court disregards the schedule of "disputed claims", Chemical argues that Dana's insolvency would not be affected because her liabilities would still exceed her assets by more than $2.3 million.[4]

---

3. The Westport property sold for $4,240,000 on October 26, 1994.

4. Chemical points out that "[a]ccording to her bankruptcy petition, Dana's liabilities exceed-

The Trustee next argues that Dana's guaranties should not be included in the insolvency analysis to the extent that they are contingent liabilities "secured by property of a third person," rendering "it impossible to determine what amount, if any, of the debt should be included in the insolvency analysis." [Doc. 347 at 5 subsections (b) & (c)]. Again, even if the Court were to disregard the guaranties, as well as the disputed debts, Dana's liabilities would still exceed her assets by $1,065,-450.30.[5] Similarly, if the Court were to accept the Trustee's arguments as true and disregard the Pendenyn debt listed as $150,000, and the Banque Paribas debt listed as $710,943.88 Dana's liabilities would still exceed her assets. [Doc. 347 at 5 subsection (d)].

The Trustee further challenges the bankruptcy petition, stating Chemical did not include the secured creditors of Dana. Since there is no evidence to show the collateral for these debts, the Trustee argues that the debt is not properly included in the insolvency analysis. However, the Trustee provides no evidence to support this contention. Hypothetical argument is insufficient to raise a material issue of fact. In sum, the Trustee fails to provide any evidence that Dana was not insolvent at the time of the transfer in July 1992.

Accordingly, summary judgment is **GRANTED** in favor of Chemical on Count Two of the Third Amended Complaint.

## II. *THE SECOND ATTACHMENT*

Chemical next asserts that it is entitled to recover the PJR attachment in the amount of $976,043.80, by virtue of the fraudulent conveyance. Chemical argues

that Dana had an interest in the Westport property for Chemical to attach on August 15, 1994, pursuant to Conn.Gen.Stat. § 52–552h(a)(1). Moreover, Chemical contends that the second attachment cannot be a preference as a matter of law.

*Remedies of Creditors–Conn.Gen.Stat. § 52–552h(a)(1)*

Under Connecticut law, a creditor who prevails in a fraudulent conveyance action may avoid a transfer to the extent necessary to satisfy the creditor's claim. Conn.Gen.Stat. § 52–552h(a)(1).[6] In other words, "[a] creditor may attach property which has been fraudulently conveyed by his debtor as though no conveyance had been made." *Olin Corporation v. Castells*, 180 Conn. 49, 52, 428 A.2d 319 (1980); *Denison Dev. Co. v. Gunther*, 189 Conn. 333, 334, 455 A.2d 1340 (1983). Since the Court finds that Dana's July 1992 conveyance of the Westport property to Connaught was fraudulently conveyed, Dana's conveyance is treated as thought it never occurred and Dana is held to have had an interest in the Westport property subject to attachment by Chemical on August 15, 1994. *Murphy v. Dantowitz*, 142 Conn. 320, 325–26, 114 A.2d 194 (1955) ("Property fraudulently conveyed may, as to the creditors of the grantor, be treated as if no conveyance of it had been made....").

Accordingly, summary judgment is **GRANTED** in favor of Chemical's claim pursuant to Conn.Gen.Stat. § 52–522h. Chemical is entitled to recover on its second PJR attachment in the amount of $976,043.80.

---

ed her assets by $3,204,408. Only $838,-957.75 in debts were listed by Dana as disputed. Subtracting the latter number from the former yields $2,365,450.30" [Doc. # 358 at 5 n. 2].

**5.** This is calculated by $3,204,408 less $1.3 million (guaranties) less 838,957.75 (disputed debts) equals $1,065,450. [Doc. # 358 at 5].

**6.** Section 52–552h, entitled "Remedies of Creditors", states in relevant part,

(a) In an action for relief against a transfer or obligation under sections 52–552a to 52–552*l*, inclusive, a creditor, subject to the limitations in section 52–552i, may obtain: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim...

*Preference Under 11 U.S.C. § 547(b)*

 In opposition, the Trustee argues that Chemical's second attachment is subject to avoidance as a preference under Bankruptcy Code § 547.[7]

Plaintiff first argues that section 547(b) is inapplicable because it applies only to transfers to creditors made on account of antecedent debts of the debtor. 11 U.S.C. § 547(b)(2). Chemical points out that "the second attachment was not obtained on account of an antecedent debt of Connaught. It was obtained on account of an antecedent debt of Dana, over whose estate the Trustee has no control." [Doc. #345 at 22]. Further, the preference statute only applies to a "transfer of an interest of the debtor in property." 11 U.S.C. § 547(b). Here, Chemical attached only Dana's interest in the Westport property and not any interest held by Connaught. *See* Pl.Ex. L (order of attachment "of all *right*, title and interest of said defendant Jeanne Marie Dana").

Under these facts, the Court agrees that Dana's transfer was not "to or for the benefit of a creditor" of this debtor/Connaught, nor was it "for or on account of an antecedent debt owed" by this debtor/Connaught. The Trustee cannot "avoid any transfer of an interest of [Connaught] in [the Westport] property" under these facts and in light of this Court's finding of constructive fraud and related finding under Conn.Gen.Stat. § 52–522h treating Dana's transfer to Connaught on July 30, 1992 as though it never occurred. The Court finds that Dana held an interest in the Westport property subject to attachment by Chemical on August 15, 1994.

The Trustee has failed to prove the first two elements of an avoidable preference under section 547(b)(1) & (2). *In re Chase & Sanborn Corp.*, 68 B.R. 530, 532 (Bankr. S.D.Fla.1986), *aff'd*, 848 F.2d 1196 (11th Cir.1988); *see Matter of Evans Potato Co., Inc.*, 44 B.R. 191, 193 (Bankr.S.D.Ohio 1984) (citing multiple cases for the proposition that "there can be no preference when there is no debtor-creditor relationship" under section 547(b)).

Importantly, the Trustee fails to address how it "may avoid an interest of the debtor [Connaught] in [the Westport] property" under section 547(b). The Court has considered the Trustee's other arguments under section 547(b) and finds them unavailing. The Court considers at all times that Chemical strenuously litigated its claim to the second PJR attachment under a theory of fraudulent transfer, specifically, Dana's fraudulent transfer of the Westport property to Connaught in July 1992. Chemical filed proper notice of the PJR attachment of Dana's interest on the Westport land records and by further commencing an action against Connaught for fraudulent conveyance.

Accordingly, summary judgment is **DE-NIED** on the Trustee's claim of preference under 11 U.S.C. § 547(b).

*Penderyn Mortgage*

 The Trustee next argues that Chemical's second attachment is junior to the Penderyn Mortgage. The facts, as alleged by the Trustee, are as follows. On July 18, 1994, James A. Miller, Trustee for Connaught, executed a mortgage in favor

7. Section 547(b) states in relevant part:

the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
 (A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 © such creditor received payment of such debt to the extent provided by the provisions of this title.

of Penderyn, Ltd. to secure indebtedness of Connaught to Penderyn in the original amount of $380,000. The Trustee avoided the mortgage to Penderyn, pursuant to section 547(b). The Trustee contends that "[b]ecause the Penderyn mortgage is prior in time to Chemical's Second Attachment, the Trustee's rights as a mortgagee of 26 Beachside are senior to Chemical's rights via the Second Attachment." [Doc. # 354 at 27].[8]

The Court declines to find that the Trustee, after avoiding the mortgage under section 547(b), can now use the existence of that mortgage to benefit the Connaught Bankruptcy Estate. "Property fraudulently conveyed may, as to the creditors of the grantor, be treated as if *no conveyance of it had been made.*" *Murphy v. Dantowitz*, 142 Conn. 320, 325–26, 114 A.2d 194 (1955). The recipient of property obtained by fraud "does not actually acquire title to it." *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1576 (9th Cir.1985); *In re Flight Transportation Securities Litigation*, 730 F.2d 1128, 1136 (8th Cir.1984), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985) ("a Trustee in Bankruptcy can have no interest in property acquired by the fraud of a bankrupt, or anyone else, as against the claim of the rightful owner of such property."); *In re Teltronics, Ltd.*, 649 F.2d 1236, 1239 (7th Cir.1981); *In re Paragon Securities Company*, 589 F.2d 1240, 1242 (3d Cir.1978); *In re Tap, Inc.*, 52 B.R. 271, 279 (Bankr. D.Mass.1985) ("Property obtained by fraud of the debtor or of another is not part of the debtor's estate."). "The principle underlying this rule is that the creditors should not benefit from fraud at the expense of those who have been defrauded." *In re North American Coin & Currency, Ltd.*, 767 F.2d at 1576.

It follows then that, "the Trustee does not succeed to any greater interest than that held by the debtor. Where the debtor only holds legal title to the property and not an equitable interest, the property only becomes part of the estate to the extent of the legal title and the equitable interest not held by the debtor does not become part of the estate." *In re Richardson*, 75 B.R. 601, 603 (Bankr. C.D.Ill.1987) (citations omitted); *see* Conn. Gen.Stat. § 52–552h(a)(1); *Olin Corp. v. Castells*, 180 Conn. 49, 52, 428 A.2d 319 (1980) ("A creditor may attach property which has been fraudulently conveyed by his debtor as though no conveyance had been made."); *In re Andersen*, 166 B.R. 516, 530 (Bankr.D.Conn.1994) (holding "[a] creditor with a fraudulent conveyance claim may pursue only the specific property transferred or the proceeds thereof ... [and] if successful, may void the transaction, which returns the fraudulently transferred property back to the [transferor], so that it is available to satisfy the creditor's claim."); *Matter of Luftman*, 245 F.Supp. 723, 725 (S.D.N.Y.1965) ("A creditor may treat a fraudulent conveyance as if it had never been made and immediately attach or levy execution on the property conveyed.").

Chemical also argues, and the Court agrees, that at best, Connaught acquired only bare legal title to the Westport property with equitable ownership held in constructive trust for the benefit of Chemical. *See Banister v. Solomon*, 126 F.2d 740, 741 (2d Cir.1942) (Judge Learned Hand expressing rule that property conveyed fraudulently by debtor results in constructive trust in favor or creditors); *see Cohen v. Cohen*, 182 Conn. 193, 203, 438 A.2d 55 (1980) ("a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be

8. The Court notes that the portion of the PJR attachment at issue here is the upward modification of $113,882.55 ordered by the Court (Martinez, M.J.) on August 12, 1994, representing accrued interest from June 30, 1992 on the first PJR attachment. This is calculated as follows, $976,043.80 (second attachment) less $862,161.25 (first attachment) equaling $113,882.55.

unjustly enriched if he were permitted to retain it."); *Schmaling v. Schmaling*, 48 Conn.App. 1, 18, 707 A.2d 339 (1998) ("A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.") (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378 (1919) (Cardozo, J)); *see also Zack v. Guzauskas*, 171 Conn. 98, 103, 368 A.2d 193 (1976) ("a constructive trust arises ... against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy."); *In re K Chemical Corp.*, 188 B.R. 89, 98 (Bankr. D.Conn.1995) (same). The Court finds that the imposition of a constructive trust for the benefit of Chemical is warranted in this case.

A constructive trust, confers on the beneficiary of the property an equitable interest in the property superior to that of the bankruptcy trustee. *In re Koreag, Controle et Revision, S.A.*, 961 F.2d 341, 352 (2d Cir.1992); *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir.1989) (same); *In re K Chemical Corp.*, 188 B.R. 89, 97 (Bankr.D.Conn.1995) (same). Thus, Chemical's interest in the Westport property is superior to the Trustee's. *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d

Cir.1996) (trust beneficiary "entitled to claim trust property ahead of even creditors holding security interests in the property."); *see also* 11 U.S.C. § 541(d) ("Property in which the debtor holds ... only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (Bankruptcy Code "plainly exclude[s] from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the [bankruptcy] petition."); *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir.1989) (property held by debtor in a constructive trust excluded from bankruptcy estate).

The Court's decision is based on equitable considerations, its finding of constructive fraud, and its holding under Conn. Gen.Stat. § 52–522h. The Trustee's citation to *In the Matter of Hulk*, 8 B.R. 444 (Bankr.D.Conn.1981) is not controlling and is distinguishable under these facts.

Accordingly, summary judgment is **DENIED** on the Trustee's claim that Chemical's second attachment is junior to the Trustee's Penderyn Mortgage.

## TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

### I THE FIRST ATTACHMENT

In seeking to determine the priority of recovery for Chemical Bank and Connaught's other creditors from sale proceeds of the Westport property,[9] the

---

9. By order dated October 26, 1994, the Connaught Bankruptcy Estate sold the Westport property for approximately $4,240,000. [Miller Aff., Doc. # 357 ¶ 6]. The Trustee states that "the Bankruptcy Estate has satisfied all valid encumbrances senior in right to the First Attachment." [Doc. # 354 at 9]. As of May 28, 1998, the Bankruptcy estate retained approximately $1,147,330.99 of the proceeds of sale. [Doc. # 357 ¶ 7]. These proceeds,

plus the accrued interest, represent the sole asset of the Bankruptcy Estate. *Id.* ¶ 8.

As a preliminary matter, the Trustee contends that as of the bankruptcy petition date, September 23, 1994, it placed a "duly perfected judgment lien on all of Connaught's interest in 26 Beachside" to secure the claims of Connaught's creditors, pursuant to the powers enumerated in 11 U.S.C. § 544. He further asserts that the "rights of Connaught's creditors to seek recovery from 26 Beachside

Trustee asserts that Chemical's first PJR attachment of June 30, 1992, fails to "strictly comply" with the requirements set forth in Conn.Gen.Stat. § 52–285. In support, he argues, "a sheriff did not file a certificate of attachment." [Doc. # 354 at 20]. Rather, "Chemical recorded the Order Granting Prejudgment Remedy." *Id.* The Order provided, "ORDERED that the plaintiff [sic] may attach to the sum of $862,161.25 the real estate standing in the name of the defendant Jeanne–Marie Dana." *Id.* The Trustee argues that the "[r]ecording of the notice that Chemical *may* attach the property ... is not an attachment." *Id.* He asserts that the sheriff "did not complete a certificate stating that he attached the property, he never signed any document filed in the land records ... and he never stated the amount of damages sought by Chemical in this action." *Id.* at 20–21.

 As set forth earlier in this opinion, there have been several prior challenges to the first attachment. Chemical argues, and the Court agrees, that this issue was specifically addressed by Judge Eginton earlier in this litigation and should not be relitigated now under the law of the case doctrine. *Remington Products, Inc. v. North American Philips, Corp.,* 755 F.Supp. 52, 54 (D.Conn.1991).

Judge Eginton's opinion states

The court also finds defendant Dana's argument of defective compliance with Conn.Gen.Stat. § 52–285 unavailing given the holding in *Milestan v. Tisi,* 140 Conn. 464, 101 A.2d 504 (1953). In *Milestan,* the court found that non-compliance with the requirements of § 52–285 does not render the attachment invalid against the world: the attachment is voidable, rather than void, at the instance only of any other creditor or bona fide purchaser. *Milestan* at 470, 101

A.2d 504. Dana the only party to this action attacking the validity of the attachment, is neither a creditor nor a bona fide purchaser.

Doc. # 167 at 3. Nevertheless, the Trustee contends that Judge Eginton "did not explicitly, or by necessary implication, determine that a creditor or bona fide purchaser ... could not prevail against Chemical's attachment."[10] [Doc. # 347 at 12]. The Court disagrees. A fair reading of Judge Eginton's opinion reveals that, notwithstanding the fact that Dana was "not a creditor nor a bona fide purchaser" her argument was nevertheless unavailing. The Court declines to exercise further review of Judge Eginton's opinion. The Trustee presents no circumstances to warrant reconsideration of this issue *de novo.* *Remington,* 755 F.Supp. at 54 ("any of three circumstances may justify reconsideration of an earlier decision in the case: 1) an intervening change in controlling law; 2) new evidence; or 3) the need to correct a clear error of law or to prevent manifest injustice.") (citations omitted).

Accordingly, summary judgment is **DENIED** on the Trustee's challenge to Chemical's first attachment pursuant to Conn. Gen.Stat. § 52–285.

*CONCLUSION*

For the reasons stated, Chemical's Motion for Summary Judgment [**Doc. # 343**] is **GRANTED** and the Trustee's Motion for Summary Judgment [**Doc. # 353**] is **DENIED.**

---

do not change if 26 Beachside was fraudulently conveyed, or conveyed to an "alter ego" or an "instrumentality." " [Doc. # 354 at 13]. The Court understands the Trustee to mean recovery from the proceeds of sale from

26 Beachside. Chemical does not challenge these contentions.

**10.** The Trustee fails to address *Milestan v. Tisi* relied on by Judge Eginton.